Timothy **JANOWSKY** and Peggy **Janowsky**, Plaintiffs,

v.

**UNITED STATES of America,** **Defendant.**

Civ. No. H 88–301.

United States District Court, N.D. Indiana, Hammond Division.

May 8, 1989.

---

Bruce J. Kelton, Beverly Hills, Cal., and John Pera, Merrillville, Ind., for plaintiffs.

John R. Bolron, Jeffrey Axelrad, Director, Phyllis J. Pyles, Marie Louise Hagen, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., and James G. Richmond, U.S. Atty., Hammond, Ind., for defendant.

### ORDER

MOODY, District Judge.

This matter is before the court on the United States of America's (hereafter, the government) "Motion to Dismiss the Complaint Pursuant to Rules 12(b)(1) and 12(b)(6)." The government contends that plaintiffs' action is barred by sovereign immunity, as preserved by the misrepresentation and fraud exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(h).

The facts in plaintiffs' complaint are accepted by the government, and the court, as true for the purpose of ruling on the motion to dismiss. *United States v. New Wrinkle*, 342 U.S. 371, 72 S.Ct. 350, 96 L.Ed. 417 (1952); *Lamb v. Panhandle Community Unit School Dist. No. 2*, 826 F.2d 526 (7th Cir.1987). Tersely stated, plaintiff Timothy Janowsky voluntarily assisted the FBI in an undercover investigation in Lake County, Indiana. Through the use of his vending machine business, Janowsky infiltrated a criminal conspiracy and secretly recorded various meetings and conversations, and also provided evidence by testifying in grand jury proceedings and in open court. In return for his assistance, FBI agents agreed to arrange compensation to Janowsky for loss of business and related financial hardships, reimbursement for expenses and losses, legal and financial counseling, and protection from physical harm and retaliation. Plaintiffs assert that the negligent performance of these "compensation and financial protection tasks"[1] entitle them to compensatory damages for their out-of-pocket losses and associated emotional distress.

To the government, the essence of this action is that "federal officials made promises to Timothy Janowsky in order to induce his cooperation with certain criminal investigations and that those promises were not kept."[2] Thus, the government argues that the legal theory of the action is either intentional or negligent misrepresentation, and that such torts are not actionable against the government. *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).

Plaintiffs disagree vigorously: "The gravamen of plaintiffs' action is not misrepresentation, but the negligent performance of duties by FBI Special Agents ... [m]isrepresentation and deceit are *not* factors ... incompetence and negligence in the supervision of Janowsky as an undercover operative form the basis of plaintiffs' claims." Brief at 7. In short, plaintiffs argue that the government negligently ran the under-

---

1. This is the description used by plaintiffs in their "Opposition to Defendant's Motion to Dismiss" filed on November 10, 1988 at page 3. This document will be referred to hereafter as "Brief."

2. Page 4 of "Brief Submitted by Defendant United States of America in Support of its Motion to Dismiss the Complaint," referred to hereafter as "Movant's Brief."

cover operation, and this negligence caused their harm.

"It is not unusual for ... plaintiffs to describe their cause of action in a way calculated to avoid the misrepresentation exception." *Preston v. United States*, 596 F.2d 232, 237 (7th Cir.1979). This is not difficult, because nearly every tort involves an element of misrepresentation. For example, negligent driving might consist of signaling a right turn but making a left. However, not every misrepresentation can be characterized as a more general tort. Thus, writing a bad check does not become the tort of "negligently failing to deposit sufficient funds."

Because of this theoretical overlap, courts must "distinguish those causes of action for independent torts that only collaterally involve misrepresentations from those ... which are fundamentally grounded on the common law tort of misrepresentation." *Preston*, 596 F.2d at 238. The court must "look beyond the literal meaning of the language to ascertain the real cause of the complaint." *Neustadt*, 366 U.S. at 703, 81 S.Ct. at 1298. In making this determination, as plaintiffs correctly point out, courts have distinguished suits for actions taken in reliance upon governmental misrepresentations from suits for claims arising from negligent performance of operational tasks.

Thus, a person induced to purchase a home by a faulty FHA inspection and appraisal has relied on a misrepresentation, and may not bring suit. *Neustadt*. On the other hand, a person who relies on the absence of a warning from a lighthouse and runs aground may bring suit because of the negligent performance of an operational task, the misrepresentation being only collateral to the negligence. *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 398 (9th Cir.1964). A person whose draft board transposes his lottery number and sends him off to war has relied on a governmental misrepresentation of his obligation to enter the Army and may not bring suit, while a person who is misdiag-

nosed and receives inadequate medical care as a result may bring suit because the misrepresentation, the diagnosis, is collateral to the operational negligence, the improper care. *Fitch v. United States*, 513 F.2d 1013 (6th Cir.1975); *Hungerford v. United States*, 307 F.2d 99 (9th Cir.1962).

The conclusionary rationale of these cases begs for reasoning: "Courts have followed *Neustadt's* distinction between personal injury or property damages arising from negligent performance of operational tasks on the one hand and injury resulting from commercial decisions taken in reliance on governmental misrepresentations on the other.... The test is not whether the injury was economic, but whether it resulted from a commercial decision based on a governmental misrepresentation." *Preston*, 596 F.2d at 238–39. Fitting some cases, like the *Hungerford* misdiagnosis decision, into this rationale requires shoehorning. Perhaps it is easier to define the test by paraphrasing Justice Stewart: the court knows a misrepresentation when it sees one. *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964).

Applying this welter of precedent to the case at hand, the court finds that this action is one that is fundamentally based on misrepresentation and which must be dismissed for lack of jurisdiction. Plaintiff Janowsky is not like an airline pilot, ship captain, or hospital patient who, carrying out his daily routine, is harmed by misinformation provided by a government official negligently carrying out day-to-day duties. Instead, Janowsky voluntarily undertook specific actions in reliance on specific representations made to him only: promises that if he aided in an investigation he would be reimbursed, his family would be protected, etc.

Put another way, without the government's false promises, Janowsky would not have been harmed, because he would not have participated in the undercover operation. Janowsky has attempted to avoid this conclusion by arguing that the misrepresentations did not cause the harm: "the portions of the claim alleging failure to obtain approval for compensation [etc.] ...

would have caused damage to the Janowskys irrespective of their reliance upon any misrepresentation to them." Brief at 10. As the government aptly observes, this conclusion only obtains if the misrepresentations did not induce Janowsky to cooperate; and if they did not, then Janowsky truly volunteered in the sense that he acted in return for nothing. Thus, the government owed him no duty to reimburse or protect him and therefor did not commit a tort by failing to do so.[3]

In conclusion, the court can find no basis to hold that the FBI owes any duty to the world at large, or to the Janowskys in this case, to carry out its investigations in any particular fashion. In the absence of a duty that has been breached, there is no negligence. To the extent there was a duty owed to the Janowskys, it arose from certain representations made to them. Whether these representations were made fraudulently or negligently, no suit may be brought based on them. 28 U.S.C. § 2680(h).

For the reasons set forth, this action is DISMISSED pursuant to Fed.R.Civ.P. 12(b)(1) & (6).

---

**3.** In a footnote in their Brief at p. 7, the Janowskys maintain that "[f]inancial compensation arrangements for cooperating witnesses are part of the duties of F.B.I. agents, and evidence of this will be part of the proof in this case." A naked assertion that an element essential to the cause of action will be proved at trial is not enough to withstand a 12(b)(6) motion to dismiss. The complaint must allege sufficient facts to outline the cause of action. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985); *Benson v. Cady,* 761 F.2d 335, 338 (7th Cir.1985). Except as is barred by the misrepresentation exception, explained in the text, the complaint alleges no facts giving rise to any duty owed by the government to the Janowskys.