Juan **VILLEGAS**, Plaintiff–Appellee, Cross–Appellant,

v.

**PRINCETON FARMS, INCORPORATED**, Defendant–Appellant, Cross–Appellee.

Nos. 89–1632, 89–1850.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1989.

Decided Jan. 22, 1990.

Susan Compernolle, Vincent H. Beckman, Chicago, Ill., Shelley Davis (argued), Washington, D.C., Kalman Resnick, Todd Thomas, Dowd & Resnick, Chicago, Ill., for plaintiff-appellee, cross-appellant.

Bradford L. Livingston, Carl H. Trieshmann (argued), James R. Beyer, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellant, cross-appellee.

Before CUMMINGS, FLAUM and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

Juan Villegas sued his former employer, Princeton Farms, in the United States District Court for the Northern District of Illinois, alleging that he was fired in violation of Illinois law for his membership in, and advocacy for, a farmworker labor union. Jurisdiction rests solely on diversity of citizenship. The district judge granted Princeton Farms' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), finding that Illinois law does not recognize a cause of action for retaliatory discharge against an employer who fires an employee for union activity. No. 88–C–8641, 1989 WL 13211, 1989 U.S.Dist. LEXIS 1495 (N.D.Ill. Feb. 9, 1989). Villegas then filed a motion to vacate the judgment and voluntarily dismiss the case without prejudice. The district judge granted the motion, inviting Villegas to refile his action in state court. For the reasons stated below, we reverse the district judge's final decision to vacate and dismiss and thus reinstate his original dismissal of the plaintiff's diversity suit for failure to state a claim under Illinois law.

### I.

Princeton Farms does not contest the diversity basis for the suit that Villegas brought on October 11, 1988. Villegas is a citizen of Mexico lawfully residing in the United States. He was employed by Princeton Farms, an Illinois corporation located in Princeton, Illinois, as a mushroom picker for four years until March 24, 1988, when he was fired from that job.

Villegas claims that Princeton Farms fired him in retaliation for his involvement in labor union activities and that in doing so the corporation committed the tort of retaliatory discharge recognized in Illinois. To state a cause of action for retaliatory discharge in Illinois, Villegas is required to allege that his firing was "in contravention of a clearly mandated public policy." *Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 630, 478 N.E.2d 1354, 1356 (1985); *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 18, 421 N.E.2d 876, 881 (1981). Villegas contends that the requisite public policy is found in Illinois' so-called anti-yellow dog

contract statute, Ill.Rev.Stat. ch. 48, ¶ 2b,[1] which he argues "clearly mandates" the right of workers to join unions and engage in concerted activity without losing their jobs because of those activities.

The National Labor Relations Act does not preempt this claim, both parties agree, because Congress precluded "agricultural laborers" from the definition of "employees" under the Act. See Section 2(3) of the Act, 29 U.S.C. § 152(3); *N.L.R.B. v. C & D Foods, Inc.*, 626 F.2d 578, 581 (7th Cir. 1980). Villegas apparently did not perform any regular amount of non-agricultural work.

Villegas followed his suit with a motion for a preliminary injunction to require Princeton Farms to reinstate him and also to prohibit Princeton Farms "from engaging in any activities which coerce [Villegas] or any of his co-workers to refrain from exercising their right to belong to a labor union while employed." Attached was an affidavit by Villegas describing his termination and his activity with the Farm Labor Organizing Committee, a labor union with its headquarters in Toledo, Ohio.

Princeton Farms moved to dismiss the complaint with prejudice for failure to state a claim upon which relief could be granted, pursuant to Rule 12(b)(6), or in the alternative transfer the action to the United States District Court for the Central District of Illinois, pursuant to 28 U.S.C. § 1404. Princeton Farms denied that Villegas was fired for his involvement with the union. Instead, the defendant asserted that Villegas lost his job because he failed to pick an average of eleven baskets of mushrooms per hour during work periods over the course of one month. Princeton Farms argued that—even assuming that Villegas was fired because of his participation in lawful union activities—Villegas failed to allege a cognizable claim because the Illinois courts have not recognized a retaliatory discharge cause of action for a plaintiff who loses his job for that reason. The Illinois statute, Princeton Farms argued, prohibits the use of union-stifling "yellow dog" contracts, but does not prevent employers from terminating workers because of their organizing activity.

Villegas argued that in passing the anti-yellow dog contract law, the Illinois Assembly carved out an exception to the general rule in Illinois that employers have broad discretion to fire at-will employees such as Villegas. Villegas conceded that no Illinois court had interpreted the provision to prohibit an employer from terminating a worker because of his membership in a labor union, but argued that that fact should not prevent the district judge from anticipating such a holding from the Illinois Supreme Court. In a 33–page memorandum and a six-page sur-reply memorandum, both of which were scholarly and able, plaintiff's counsel attempted to support that argument with legislative history and state and federal court precedent.

The district judge was not persuaded. In a Memorandum and Order dated February 9, 1989, the judge aptly summarized the facts and carefully weighed the legal arguments regarding the state of the law in Illinois regarding retaliatory discharge in the context of a firing for union activity. He then observed that a federal court considering a diversity case may not enlarge state law. In support of this proposition he cited with approval a statement made by this Court in the course of an attempt to divine Wisconsin law that "[f]ederal judges are disinclined to make bold departures in areas of law that we have no responsibility for developing." *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir.1985).

Turning to the substance of the law at issue, the district judge found that while Illinois courts might "glean" from the anti-yellow dog contract statute a public policy to support Villegas' claim for various rea-

---

1. In relevant part, the state statute renders "contrary to the public policy of the State of Illinois," "wholly void," and "not * * * enforceable" any contract or agreement of employment in which "either party to such contract or agreement undertakes or promises not to join, become, or remain a member of any labor organization" or if "either party to such contract or agreement undertakes or promises that he will withdraw from an employment relation in the event that he joins, becomes, or remains a member of any labor organization."

sons, there is as yet no clear expression of the required public policy in state statutory or case law. Thus, "our limited role in the evolution of state law requires us to decline to recognize a novel application of an ever developing state law tort."

Accordingly the judge denied Villegas' motion for a preliminary injunction and granted Princeton Farms' motion for dismissal. The dismissal included the following condition: "but with leave granted to plaintiff to move within ten days to vacate this dismissal and to dismiss this cause voluntarily and without prejudice." This order was recorded as a civil judgment on February 9, 1989.

Eight days later, Villegas accepted the invitation to move to vacate the order and to request entry of a voluntary dismissal without prejudice. The district judge held a hearing on February 24, 1989, during which he announced that he would grant Villegas' motion, telling counsel for both sides:

> [T]here is a procedure in the Court of Appeals to certify a question to the state courts and to get an answer. There isn't a procedure here. In the circumstances, what I had contemplated accomplishes the same result. You people have done all the briefing you are going to do in this case, so that if, in fact, the plaintiff starts over again in state court, the work is already done. You get a shot, at this point, at the somewhat moving target of a retaliatory discharge law in the State of Illinois at the place where it ought to be decided.

Counsel for Princeton Farms immediately objected on the record that the district judge was effectively "abstaining from exercising jurisdiction in a case where you clearly have jurisdiction." The district judge did not respond on the record. In an order entered on the court's docket that same day, February 24, the district judge granted the motion to vacate the dismissal order of February 9 and granted the motion for voluntary dismissal without preju-

dice. It is from this final order that Princeton Farms appeals.

At oral argument in this appeal, Villegas' counsel represented that Villegas had not yet refiled his complaint in state court because he was prevented from doing so by Illinois rules pending the result of this appeal. But counsel stated that Villegas would follow the district judge's invitation to refile in state court if he prevailed in this appeal.

## II.

The merits of Villegas' claim that he was fired for his union activities are not at issue in this appeal. They were not addressed by the district judge and have not even been tested through discovery by the parties. The only question properly presented for review is whether the district judge abused his discretion in issuing his February 24th order vacating his order of February 9 and in allowing Villegas to dismiss his action voluntarily.[2] Before taking the possible justifications for the second order in turn, it is necessary to determine whether the district judge decided the case on the merits in his first order.

■ Villegas argues that the district court's February 9th memorandum was in essence a statement that Illinois law is undetermined and that, therefore, the Illinois courts should decide his case. Several sentences within the memorandum are admittedly ambiguous and can be read, out of context, as suggesting that the judge was reserving judgment. The penultimate paragraph of the memorandum opinion, however, shows the import of the district court's conclusion that Illinois law does not support the plaintiff's claim:

> [Villegas] is unable to direct this court's attention to a clear expression of the required public policy in existing Illinois statutes or case law. Although there may be merit to his claim, our limited role in the evolution of state law requires us to decline to recognize a novel application of an ever developing state

---

**2.** Rule 60 of the Federal Rules of Civil Procedure is, of course, available to allow for alteration of judgments due to the discovery of mistakes, new evidence, fraud and the like. Villegas does not argue that the district court's final order was justified by the provisions of Rule 60.

law tort. Illinois courts should have the first opportunity to address plaintiff's claim and we therefore leave the resolution of this dispute to that forum.

This phraseology shows that the district court was satisfied that Princeton Farms should prevail because Illinois courts had not enlarged state tort law to the point necessary to support Villegas' claim. The district judge would hardly write a seven-page Memorandum and Order canvassing the law at issue if his only intention was to direct the parties to state court. A dismissal under Federal Rule of Civil Procedure 12(b)(6) is a decision on the merits. As an Article III tribunal, a district court of course may not render advisory opinions.

The judgment attached to the Memorandum and Order is problematic. On the one hand, it is a civil judgment on a form used by district court judges to create orders, checking the box which states in part, "The issues have been tried or heard and a decision has been rendered." On the other hand, it also includes the language granting Villegas 10 days to move to vacate the dismissal and dismiss the case voluntarily and without prejudice. At the February 24th hearing, the district judge did not explain his reasoning in vacating the dismissal except to imply that Villegas should refile his action in state court. At no point did the district judge express second thoughts regarding his conclusion in the February 9, 1989, Memorandum and Order that Illinois law did not support Villegas' claim.

Taken together, the Memorandum and Order, the judgment form, and the brief statement during the February 24th hearing show that the district court: (1) determined, after careful reflection, that Illinois law could not support Villegas' cause of action and issued an order to that effect; and (2) nevertheless, subsequently sought to redirect the case into the courts of Illinois. As the following discussion demonstrates, it was a clear abuse of discretion to decide the merits of the legal issue while hearing the case under diversity jurisdiction and then later redirect the parties to state court.

## A. Abstention

As then Judge Stevens stated in an opinion of this Court, only in "extraordinary situations" may a federal court abstain from deciding state law issues in a case that is properly based on diversity jurisdiction, even when the duty to decide a case requires making an estimation of state law. *Walker v. Kruse,* 484 F.2d 802, 803, 805 (7th Cir.1973) (citing *Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9); see also *McNeese v. Board of Ed. for Community School Dist. 187,* 373 U.S. 668, 673 n. 5, 83 S.Ct. 1433, 1436 n. 5, 10 L.Ed.2d 622 ("difficulties and perplexities of state law are no reason for referral of the problem to the state court"). In his seven-page Memorandum and Order, the district judge did not postpone his decision in Villegas' case to await an anticipated or pending opinion of the Illinois courts on the same issue. See *Nature Conservancy v. Machipongo Club, Inc.,* 579 F.2d 873, 876 (4th Cir.1978), certiorari denied *sub nom. Machipongo Club, Inc. v. Nature Conservancy,* 439 U.S. 1047, 99 S.Ct. 724, 58 L.Ed.2d 706 (district court sitting in diversity directed to stay its judgment pending final decision by Supreme Court of Virginia on same issue). We are aware of no litigation pending in the Illinois courts in which the question here presented may be decided.

Nor did the district judge, in his Memorandum and Order or in his subsequent hearing and order, point to an interest of the State of Illinois or a coherent state policy involving cases such as Villegas' that would be upset by federal court interference. It is not dispositive, of course, that the district judge did not explicitly refer to cases such as *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424, and *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, which describe abstention doctrines allowed under Supreme Court doctrine. See, *e.g., Kelly Services, Inc. v. Johnson,* 542 F.2d 31, 32 (7th Cir. 1976) (federal courts should avoid "needless conflict with the administration by a state of its own affairs"). Yet the record is devoid of evidence that a regulatory sys-

tem or coherent policy of the State of Illinois is implicated in this case, so that the district court could not even implicitly rest on those prudential doctrines.

Villegas does not point to a state scheme or system to support his case for abstention, nor does he suggest that the state judiciary or state agencies have special expertise on the issue which would counsel in favor of abstention. Instead, he argues that because "establishing the public policy of Illinois [regarding dismissal for union activity] is by definition of peculiarly local concern, and will have far-reaching effects," the district judge was correct in leaving these issues to the Illinois courts. Plaintiff's Br. at 25. This approach would accomplish far too much. It would allow the federal courts to abstain from hearing all diversity cases of any social or economic significance whatsoever and is therefore antithetical to the doctrines of limited abstention endorsed by the Supreme Court and this Court. The district judge's second order cannot be categorized as a permissible exercise of abstention merely because the dispute addressed in that order involves an unquestionably serious issue of consequence to labor relations in Illinois.

### B. Voluntary Dismissal

Under Federal Rule of Civil Procedure 41(a)(2), a district court may allow a plaintiff to dismiss his or her complaint voluntarily without prejudice. That decision is left to the sound discretion of the trial court. *Tyco Laboratories, Inc. v. Koppers, Inc.*, 627 F.2d 54, 56 (7th Cir.1980) (*per curiam*). Rule 41(a)(2) is misused, however, when the district judge has already rendered a final adjudication clearly resolving the merits of the case and then allows the losing party to "voluntarily dismiss" that order in favor of a state tribunal. Cases of this Court, such as *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471 (7th Cir. 1988), which address the need to establish prejudice to the defendant before reversal of a Rule 41(a)(2) dismissal is appropriate, are not relevant to this case because of the res judicata effect of the district judge's first order. Villegas is unable to provide this Court with any reported case in which

a district judge has successfully followed the path taken in this case: deciding a case on the merits and then vacating his decision in order to grant the losing party the opportunity to press the same case in state court.

### C. Amendment of Judgment

Under Federal Rule of Civil Procedure 59(e), a district court may alter or amend a judgment, allowing the court "to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir.1986). Vacation of a judgment is one form of altering a judgment pursuant to Rule 59(e). *Sutliff, Inc. v. Donovan Cos., Inc.*, 727 F.2d 648, 652 (7th Cir.1984). In this case, however, the district judge cited no errors or changes of heart regarding the merits of the legal arguments, but instead decided to send the case to the Illinois courts as the preferred forum.

Villegas, in his brief motion to vacate and allow for voluntary dismissal, did not offer any other grounds for vacation or alteration. He simply asserted that, "Justice will be served by allowing Plaintiff to voluntarily dismiss his action without prejudice, as he will then be able to pursue his remedies in state court and obtain a clarification of his rights therein." It was an abuse of discretion to vacate a judgment for that reason.

### III.

The district judge squarely addressed the legal question presented by Villegas' complaint and found that it failed to state a claim of retaliatory discharge. Villegas cross-appealed from that order to preserve the issue on its merits, but both parties decided not to brief the issue fully. Nevertheless, there are no disputed facts relevant to this question and the record contains the comprehensive briefs presented to the district court on this issue.

A Rule 12(b)(6) dismissal is reviewed *de novo* to determine whether under any set of facts the non-moving party

could prevail. *Corcoran v. Chicago Park District,* 875 F.2d 609, 611 (7th Cir.1989). The district judge correctly found, first, that the Illinois courts have attempted to limit the scope of the tort of retaliatory discharge, and, second, that it would require an extension of that tort to include the claim made by Villegas. The absence of a "clearly mandated public policy" on which to base the retaliatory discharge claim is fatal to claims such as Villegas' until the Illinois legislature or its courts state otherwise. There is no need to remand this question for further consideration by the district court. The issue was decided clearly and correctly the first time around.

## IV.

Villegas attempted to prove his novel theory in federal court, instead of giving the Illinois courts the first opportunity to address this issue. He may have taken advantage of diversity jurisdiction for the very reason that diversity was created as a form of jurisdiction—out of fear that there would be prejudice against him, as a "foreigner," in the state courts. But he cannot now win a second hearing in state court on a question already decided by the federal courts. As this Court has cautioned before, "[F]ederal court is not the place to press innovative theories of state law." *Anderson v. Marathon Petroleum Co.,* 801 F.2d 936, 942 (7th Cir.1986). Having pressed his theory and lost in the federal courts, his case is finished. Litigation ends with a decision based "on the merits." *American Nat'l Bank & Trust Co. v. City of Chicago,* 826 F.2d 1547, 1552 (7th Cir. 1987).

## V.

For the foregoing reasons, the district court's order of February 24, 1989, is reversed. The district court's order of February 9, 1989, dismissing Villegas' complaint for failure to state a claim, is reinstated.