Timothy A. JANOWSKY and Peggy J. Janowsky, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 89–2219.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1990.

Decided Sept. 17, 1990.

John R. Pera, Greco, Pera & Bishop, Merrillville, Ind., David Vandercoy, Valparaiso, Ind., Bruce J. Kelton, Beverly Hills, Cal., for plaintiffs-appellants.

James G. Richmond, U.S. Atty., Hammond, Ind., John R. Bolton, Asst. Atty. Gen., Jeffrey Axelrad, Phyllis J. Pyles, Marie L. Hagen, Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., for defendant-appellee.

Before BAUER, Chief Judge, WOOD, Jr., and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Plaintiff Timothy Janowsky seeks compensation for services rendered in his cooperation with agents of the Federal Bureau of Investigation. He also seeks damages for financial loss and emotional injuries. Plaintiff Peggy Janowsky seeks damages for emotional injuries allegedly suffered as a result of her husband's activities.

## I. BACKGROUND

The Janowskys jointly filed a lawsuit against the United States under the Federal Tort Claims Act ("FTCA") alleging the following facts.

In 1984, Timothy Janowsky was approached by special agents of the Federal Bureau of Investigation and was recruited to infiltrate corrupt police, political and organized crime activities in Lake County, Indiana. Timothy agreed to cooperate. He successfully infiltrated the groups and organizations and helped obtain the arrests and convictions of several organized crime figures, corrupt politicians and corrupt law enforcement officials.

Specifically, the complaint alleged that Timothy provided a "cover" for the FBI investigations by furnishing a business "front," purchasing gambling equipment, operating a vending machine business supported by his own assets, and providing thousands of dollars of his own money for the undercover operations. He asserted that he used his personal funds at the insistence of the FBI agents, who assured him of reimbursement. In addition, he wore a concealed tape recorder to record conversations with targets of the investigations and testified in grand jury proceedings and in open court against the targets of the undercover investigations. All of

this was done, he claimed, at the direction of FBI agents. Because of his cooperation with the FBI agents, Timothy said he expended his personal funds and placed himself and his family in danger of retaliation. The allegations also stated that the FBI agents were acting within the scope of their employment with the United States government.

The complaint alleged that the FBI agents who conducted the investigations in which Timothy participated negligently failed to obtain authority from FBI headquarters to reimburse Timothy for funds he expended and losses he incurred during the investigation. He claimed that by initiating investigations and utilizing the plaintiffs' financial resources, the FBI assumed a duty to the plaintiffs to prevent the loss of their resources. The FBI was on notice to use reasonable care to guard against the risk of financial loss by the plaintiffs. It was also alleged that the FBI knew that the investigations were dangerous and would require the plaintiffs to expend their personal funds and subject themselves and their family to retaliation from the targets of the investigations. Timothy asserted the FBI breached this duty and the plaintiffs suffered financial and psychological harm.

The complaint also alleged that the FBI and its agents negligently and wrongfully provided incorrect legal advice and incorrect financial advice to the plaintiffs which resulted in their economic loss and psychological harm. As a result, the plaintiffs allegedly suffered damages in excess of $500,000.

The government filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) alleging the claims were barred by the misrepresentation exception to the FTCA. The plaintiffs filed an "Opposition to Defendant's Motion to Dismiss." The plaintiffs admitted they "understood that they would suffer severe financial damage" and that retribution by the targets was a "virtual certainty" once Janowsky's cooperation with federal authorities became public. The plaintiffs also clarified that the basis for the claims of emotional harm due to exposure to retaliation was their alleged inability to relocate because of the failure of the FBI agents to obtain authority for the plaintiffs' "financial protection."

The district court, applying the law relating to the FTCA "misrepresentation exception," ruled that the plaintiffs' action "is one that is fundamentally based on misrepresentations and which must be dismissed for lack of jurisdiction." 713 F.Supp. 282. The court stated that but for the government's false promises the plaintiffs would not have been harmed because Timothy would not have participated in the undercover operation. Although some of their claims alleged damage which would have been incurred notwithstanding any reliance on misrepresentations, the court determined that this could be true only if Timothy was not induced to cooperate but "truly volunteered in the sense that he acted in return for nothing." Under such a scenario, the court found that "the government owed him no duty to reimburse or protect him and therefore did not commit a tort by failing to do so."

On appeal, the plaintiffs concede that the first aspect of the district court's ruling is correct. That is, if the promises and representations of the FBI agents in recruiting Timothy "induced" him to cooperate, then the misrepresentation exception to the FTCA bars the entire suit. However, the plaintiffs argue that the complaint can be read to assert that Timothy voluntarily agreed to cooperate with the government and was not induced to do so. Thus, plaintiffs argue the entire suit does not stem from misrepresentations and the district court erred by holding the government owed them no duty under these circumstances.

## II. DISCUSSION

The grant of a motion to dismiss is reviewed *de novo*. *Villages v. Princeton Farms, Inc.*, 893 F.2d 919, 924 (7th Cir. 1990). As we have done here, when reviewing the grant of a motion to dismiss, we assume the truth of all well-pleaded factual allegations. *Rogers v. United*

*States*, 902 F.2d 1268, 1269 (7th Cir.1990); *Zinser v. Rose*, 868 F.2d 938, 939 (7th Cir. 1989).

### A. *Scope of the Misrepresentation Exception*

This case turns on the proper application of the misrepresentation exception to the FTCA. Briefly stated, the FTCA is a limited waiver of the United States government's sovereign immunity. The government agrees to be subject to liability for the torts of its employees, in accordance with the law of the state in which the alleged tort occurred, which were committed in the course of their employment. 28 U.S.C. § 1346(b). This waiver is subject to exceptions, including "any claim arising out of ... misrepresentation." *Id.* at § 2680(h).

Two Supreme Court decisions have addressed the scope of the misrepresentation exception. In the first case, *United States v. Neustadt*, 366 U.S. 696, 697–98, 81 S.Ct. 1294, 1295–96, 6 L.Ed.2d 614 (1961), the question before the Court was whether the United States could be held liable under the FTCA "to a purchaser of residential property who has been furnished a statement reporting the results of an inaccurate FHA [Federal Housing Administration] inspection and appraisal, and who, in reliance thereon, has been induced by the seller to pay a purchase price in excess of the property's fair market value." The Court ruled that § 2680(h) encompasses claims arising out of negligent, as well as willful, misrepresentation. *Id.* at 702, 81 S.Ct. at 1298. Because negligence often underlies an inaccurate representation, a complaint should be examined to determine whether the real cause of the complaint is based on misrepresentation. If so, then an argument that the claim arises out of negligence rather than misrepresentation when the loss is caused by the breach of the government's duty to use due care in obtaining and communicating information is merely to state the legal definition of the tort of "negligent misrepresentation." *Id.* at 703–06, 81 S.Ct. at 1298–1300. Accordingly, the Court held the plaintiff's claim was based on misrepresentation within the meaning of § 2680(h)

and hence not actionable under the FTCA. *Id.* at 711, 81 S.Ct. at 1302–03.

In the second case, *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), the Court again addressed the misrepresentation exception of § 2680(h). The plaintiff had a house constructed with financing provided by the Farmers Home Administration ("FmHA"). The plaintiff claimed that defects were discovered in the house after she set up residence and the defects were partly attributable to the failure of FmHA employees properly to inspect and supervise the construction of her house. The Court held the claim was not barred by the misrepresentation exception. Initially, it noted that the plaintiff in *Neustadt* alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal. *Id.* at 296, 103 S.Ct. at 1093. The misrepresentation exception, the Court stated, relieves the government of tort liability for injuries which are "wholly attributable" to reliance on government misstatements, "[b]ut it does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Id.* at 297, 103 S.Ct. at 1093–94. The misstatements by the FmHA employees were not essential to the plaintiff's claims of negligent supervision and inspection. However, the Court noted that, but for the misrepresentation exception of § 2680(h), the plaintiff also could have brought a claim for negligent misrepresentation. The partial overlap between such a claim and the negligence claim does not mean that because the former is excepted under the FTCA the latter must be as well. "Any other interpretation would encourage the Government to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it commits." *Id.* at 298, 103 S.Ct. at 1094.

■ *Neustadt* and *Block* instruct that a complaint alleging claims under the FTCA should be examined to determine whether the claims are based on the government's failure to use due care in communicating

information upon which the recipient relies. The claims that are so based are barred by the misrepresentation exception and those claims that are based on the breach of another distinct duty by the government are not barred.

### B. *The Plaintiffs' Claims*

 Having reviewed the scope of the misrepresentation exception to the FTCA, we examine the claims as set forth in the plaintiffs' complaint. We discern the following claims from the pleadings: (1) the FBI agents negligently failed to obtain authority for the reimbursement of funds that plaintiffs expended in connection with Timothy's cooperation;[1] (2) the FBI agents negligently provided plaintiffs with incorrect legal advice; and (3) the FBI agents negligently provided plaintiffs with incorrect financial advice.

As noted above, the plaintiffs concede that if Timothy's cooperation was induced by reliance on the false assurances of reimbursement by the FBI agents, then the entire action is barred by the misrepresentation exception. Instead, plaintiffs argue that the complaint should be construed to allege that Janowsky gratuitously volunteered to cooperate, and that, under *Block*, each claim should be examined separately to determine whether it alleges the breach of a duty other than failure to use due care in communicating information.

It is immediately apparent that the claims that allege the FBI agents provided them with incorrect legal advice and incorrect financial advice are precisely the type that focus on the government's failure to use due care in communicating information and are barred by the misrepresentation exception. The claim that the FBI agents negligently failed to undertake the steps necessary to obtain reimbursement from FBI headquarters can survive this analysis only if it is assumed that Timothy volunteered on his own and was not induced by the assurances of reimbursement.

Accordingly, our analysis turns to whether the surviving claim sets forth a cogniza-

ble tort under Indiana law. The district court ruled that if Timothy truly volunteered the government did not breach a duty, and thus, did not commit a tort. The plaintiffs contend that this ruling was erroneous.

The plaintiffs argue that Indiana law recognizes a duty when a "special relationship" exists between parties. This "special relationship" they refer to concerns the creation of a duty to protect from physical harm which is imposed on one who voluntarily takes custody of another under circumstances such as to deprive the other of his normal opportunities for protection. Restatement (Second) of Torts § 314A (1965); *Iglesias v. Wells*, 441 N.E.2d 1017 (Ind.App.1982) (sheriff has a duty to conduct the release of prisoners from jail in a manner which will not put them in danger of physical harm from extreme cold weather); *Norman v. Turkey Run Comm. School Corp.*, 274 Ind. 310, 411 N.E.2d 614 (1980) (school authorities have a duty to exercise reasonable care and supervision for the safety of the children under their control).

We need not undertake an exhaustive examination of Indiana law to determine the existence of a "special relationship" duty and its applicability here because the duty, as stated by the plaintiffs, is to protect from physical harm—and the plaintiffs do not allege they have been physically harmed. The government owed no other duty to the Janowskys. Plaintiffs' other arguments to the contrary are novel but without merit and warrant no further discussion.

### III. CONCLUSION

For the foregoing reasons, the analysis of the district court was correct and the judgment is AFFIRMED.

---

**1.** The Plaintiffs did not allege that they had been physically harmed and they conceded that their emotional harm and fear of retaliation were due to the financial harm caused by the failure

of the FBI agents to obtain reimbursement. Thus, the allegations of fear of retaliation are merged into the claim of failing to obtain reimbursement.