989 F.2d 1203
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Timothy A. JANOWSKY and Peggy J. Janowsky, Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 92-5004.
 United States Court of Appeals, Federal Circuit.
 Feb. 17, 1993.
 
 Before ARCHER, MAYER and MICHEL, Circuit Judges.
 DECISION
 ARCHER, Circuit Judge.
 
 
 1
 Timothy A. Janowsky and Peggy J. Janowsky (collectively Janowsky) appeal the Opinion and Order of the United States Claims Court[1] dismissing an implied-in-fact contract claim (count I) for lack of jurisdiction and dismissing a Fifth Amendment takings claim (count II) for failure to state a claim upon which relief can be granted. Janowsky v. United States, 23 Cl.Ct. 706 (1991). We reverse-in-part, vacate-in-part and remand.
 
 DISCUSSION
 I.
 
 2
 Janowsky was recruited by Special Agents of the Federal Bureau of Investigation to assist the FBI in infiltrating corrupt police and organized crime activities by allowing his business, "Geno's Vending," to be used as a front for the purchase and distribution of illicit gambling equipment.[2] Janowsky agreed to engage in gambling and other activities as directed by the FBI and to record his conversations with, and testify against, targets of the investigation. In return, the FBI agreed to assist in the sale of the business at the end of the investigation or to purchase that business. According to the complaint, the FBI controlled the business for over three years during which time it could not be operated at a profit and its value was permanently reduced. Furthermore, Janowsky purchased gambling equipment and made other expenditures at the FBI's direction. The FBI denies the existence of a contract and has made no payment to Janowsky.
 
 
 3
 Janowsky filed the instant action[3] seeking $643,200 for breach of an implied-in-fact contract (count I) or, in the alternative, $400,000 for the taking of property without just compensation (count II). The government moved to dismiss both counts for failure to state a claim upon which relief can be granted. The court raised sua sponte the jurisdictional question whether the alleged contract between Janowsky and the FBI fell within the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601-613 (1988), and determined that resolution of that issue was required because Janowsky had not filed a certified claim with the agency contracting officer. The Claims Court concluded that the alleged contract was covered by the CDA and dismissed count I for lack of jurisdiction. Regarding count II, the court determined that Janowsky voluntarily allowed the government to use his property and because "there is never a taking of private property" under these circumstances, dismissed that count for failure to state a claim upon which relief can be granted. This appeal followed.
 
 II.
 
 4
 The first issue is whether Janowsky's alleged agreement with the FBI was subject to the certification requirements of the CDA, 41 U.S.C. § 605(c)(1), making it necessary for him to have filed a certified claim prior to commencing this suit. See United States v. Grumman Aerospace Corp., 927 F.2d 575 (Fed.Cir.1991) (The certification requirement of the CDA "is a jurisdictional prerequisite that must be satisfied by the contractor before it may appeal the contracting officer's claim denial.").
 
 
 5
 The CDA applies to "any express or implied contract ... entered into by an executive agency for (1) the procurement of property.... [or] (2) the procurement of services...." 41 U.S.C. § 602(a). Whether the alleged agreement constitutes a contract for the procurement of property or services within the meaning of the CDA is a question of law which this court reviews de novo. Institut Pasteur v. United States, 814 F.2d 624, 626 (Fed.Cir.1987).
 
 
 6
 According to the Claims Court, "Section 602(a) [of the CDA] is unambiguous, Coastal Corp. v. United States, 713 F.2d 728, 730 (Fed.Cir.1983), and it encompasses count I of [Janowsky's] complaint." When discussing the applicability of the CDA, this court has acknowledged the clarity of the CDA, but has said that statutory interpretation may nevertheless be necessary to "do justice to the realities of the situation." Institut Pasteur, 814 F.2d at 627 (quoting Texas State Comm'n for the Blind v. United States, 796 F.2d 400, 406 (Fed.Cir.1986)). This court has further noted that the legislative history and policy considerations underlying the enactment of the CDA are useful in determining whether Congress intended that an agreement fall within its ambit. Id.
 
 
 7
 Janowsky argued below that the policy goals of the CDA were not served by his agreement with the FBI to act as an informant and, thus, his agreement should not be subject to the CDA. The court dismissed Janowsky's arguments. Instead it relied solely on the plain language of section 602 that the CDA covered "implied contracts." The real issue in this case, however, is not whether the CDA covers implied contracts, which it does, but whether the alleged contract is for procurement of property or services within the contemplation of the CDA.
 
 
 8
 The government has stated in its brief to this court that the underlying policy considerations of the CDA have "no application to typical informant arrangements" (emphasis added); that "it is improbable that the drafters of the CDA contemplated imposing cost and competition restrictions with respect to information sought from informants"; and that "[i]nformant agreements ... generally have not been viewed as contracts for the procurement of goods or services."
 
 
 9
 What is being acquired in informant agreements is information relative to the enforcement of the criminal laws. Property is generally not acquired in such agreements, nor are services rendered in the traditional sense of performing a task or function beneficial to the operations of government or its programs. These agreements are necessary to accomplish the governmental social policy of curbing criminal conduct. Because they are not entered into so that the government can procure property or services, they are not within the provisions of the CDA. See Institut Pasteur, 814 F.2d at 628; see also Busby School of Northern Cheyenne Tribe v. United States, 8 Cl.Ct. 596, 600 (1985).
 
 
 10
 The "application of complex, burdensome, and inevitably time-consuming procurement regulations" to typical informant agreements would "not do justice to the realities of the situation." Institut Pasteur, 814 F.2d at 627, 628. As we noted in Institut Pasteur, the CDA is an implementation of recommendations made by the Commission on Government Procurement, created by Congress in 1969, to
 
 
 11
 promote economy, efficiency, and effectiveness in the procurement of goods, services and facilities by and for the executive branch of the Federal Government by--
 
 
 12
 (1) establishing policies, procedures and practices which will require the Government to acquire goods, services and facilities of the requisite quality and within the time needed at the lowest reasonable cost, utilizing competitive bidding to the maximum extent possible....
 
 
 13
 Id. (quoting Pub.L. No. 91-129, § 1, 83 Stat. 269, as amended by Pub.L. No. 92-47, 85 Stat. 102) (emphasis added). Therefore, we are convinced that typical informant agreements are not within the CDA. See G.E. Boggs & Associates, Inc. v. Roskens, 969 F.2d 1023 (Fed.Cir.1992).
 
 
 14
 The government contends, however, that the alleged agreement here is not a "typical" informant agreement. It argues that Janowsky agreed to participate in an FBI undercover investigation by allowing his business to be used as a front and by agreeing to purchase and distribute illicit gambling equipment at the direction of FBI agents, instead of simply supplying information as in "typical" informant agreements. The government's effort to distinguish this case is unpersuasive.
 
 
 15
 Here, the FBI's sole interest was in gathering and obtaining information relating to criminal conduct just as in the government-described "typical" informant agreement. All activities undertaken by Janowsky, including the use of his business, appear to have been necessary and related to his effectiveness as an informant and witness for the FBI, and to the gathering of the evidence sought by the FBI. Janowsky agreed to act in an undercover capacity for the FBI and agreed to record conversations and testify against targets of FBI investigations. Indeed, the Claims Court found that the alleged contract was for Janowsky's assistance in undercover operations, "including ostensibly normal operations" of the vending business (emphasis added). Thus, the business of Geno's Vending was the front through which the FBI hoped to collect its evidence. The consideration the FBI agreed to provide Janowsky in return for informant services, i.e., to assist in the sale of the vending machine business at the end of the investigation or to purchase that business, cannot negate the principal purpose of the agreement in the first instance which was to collect information and evidence regarding the criminal activities of others. See G.E. Boggs & Associates, 969 F.2d at 1022-28. We conclude that the alleged contract between the FBI and Janowsky cannot be meaningfully distinguished from "typical" informant arrangements.
 
 
 16
 Accordingly, the CDA has no applicability to the alleged agreement between Janowsky and the FBI. The Claims Court's order dismissing count I for lack of jurisdiction is reversed and the case is remanded for further consideration of the implied-in-fact contract claim.
 
 III.
 
 17
 The parties do not dispute that if a contract exists there can be no taking within the meaning of the Fifth Amendment. See Sun Oil Co. v. United States, 572 F.2d 786, 818 (Ct.Cl.1978); see also Winstar Corp. v. United States, 21 Cl.Ct. 112, 117 (1990). In this case, the court dismissed count II for failure to state a claim on the basis that Janowsky's actions were voluntary. The Claims Court did not rule on whether a contract existed.
 
 
 18
 Janowsky argues that if there was no implied-in-fact contract with the FBI, his cooperation with the FBI was not voluntary. He contends that in the absence of a contract, he was misled and, in effect, coerced into cooperating with the FBI and permitting his business to be used in the sting operation. He urges that his consent to participate in undercover operations by purchasing illicit gambling equipment at the direction of the FBI and by allowing the FBI to run his business was predicated on assurances of compensation.
 
 
 19
 In order to grant a motion to dismiss for failure to state a claim, a court must determine that there is no set of facts under which the plaintiff could recover. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This cannot be said here. The court on remand should reconsider whether Janowsky's property was involuntarily taken by the FBI if it determines there was no implied-in-fact contract with the FBI.
 
 
 20
 Because the Claims Court erred when it dismissed count II for failure to state a claim, we vacate its Order as to count II.
 
 COSTS
 
 21
 Each party to bear their own costs.
 
 
 
 [1]
 The Claims Court was renamed the United States Court of Federal Claims on October 29, 1992. Federal Courts Administration Act of 1992, Pub.L. No. 102-572, § 902(a), 106 Stat. 4506, 4516 (1992)
 
 
 [2]
 Due to the procedural posture of this case, the allegations in the complaint are taken as true. See Hamlet v. United States, 873 F.2d 1414, 1416 (Fed.Cir.1989)
 
 
 [3]
 Janowsky first brought suit in federal district court under the Federal Torts Claims Act, 28 U.S.C. § 1346(b). That complaint was dismissed on the ground that the Act excepts from its coverage actions arising out of misrepresentations by government officials. Janowsky v. United States, 713 F.Supp. 282 (N.D.Ind.1989), aff'd 913 F.2d 393 (7th Cir.1990); see 28 U.S.C. § 2680(h)