**SIDNEY S. ARST CO., Plaintiff–Appellee,**

v.

**PIPEFITTERS WELFARE EDUC. FUND, Defendant–Third/Party Plaintiff–Appellant,**

v.

**Michael Rand ARST and Donald Takacs, Third/Party Defendants–Appellees.**

No. 93–1227.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1993.

Decided May 20, 1994.

Timothy E. Hayes, Gerald J. Zafft, Joseph G. Nassif, J. William Newbold, II, Dale R. Joerling, Linda W. Tape, Coburn & Croft, Jane Lazuroff (argued), St. Louis, MO, for plaintiff-appellee.

John H. Goffstein, Bartley & Goffstein, Clayton, MO, Thomas J. Wilcox (argued), James T. Price, Mark A. Thornhill, Spencer, Fane, Britt & Browne, Kansas City, MO, for Pipefitters' Welfare Educational Fund.

J. William Newbold, III, Timothy E. Hayes, Joseph G. Nassif, Dale R. Joerling, Linda W. Tape, Coburn & Croft, St. Louis, MO, for Michael R. Arst, Donald Takacs.

Before BAUER, CUDAHY and ROVNER, Circuit Judges.

CUDAHY, Circuit Judge.

This is an appeal of the dismissal of a complaint against corporate officers asserting liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601–9657 (CERCLA). The complaint alleged responsibility for a waste spill on the corporate premises. The reason for dismissal of the complaint was failure to plead facts sufficient under Illinois law to "pierce the corporate veil." We reverse.

I.

This appeal arises from a dispute about CERCLA responsibilities for the spill of a hazardous substance. On January 29, 1989, Sidney S. Arst Company (Arst), an Illinois scrap metal dealer, filed a six-count lawsuit against Pipefitters Welfare Educational Fund (Pipefitters) seeking to recover certain costs. Arst had incurred the costs in responding to contamination caused by a Feb-

ruary 1988 spill of polychlorinated biphenyls (PCBs) from a used electrical transformer at Arst's premises. The transformer came to Arst as part of a load of scrap metal that Pipefitters sold Arst, and this was the alleged basis of Pipefitters' liability to Arst. Pipefitters counterclaimed, asserting claims against Arst as the site "owner or operator" to recover Pipefitters' response costs for the same PCB spill. Then, Pipefitters obtained leave to file a third-party complaint against Michael Arst, the president, majority shareholder and a director of Arst, and Donald Takacs, Arst vice president. The complaint asserted claims under CERCLA, an Illinois statute and the common law, alleging that the two men had exercised authority over Arst and its operations, such that they should be held liable for the spill at the company's facility. Specifically, Pipefitters alleged that Michael Arst and Takacs were waste facility "owners or operators" within the meaning of CERCLA and thus should be held liable for costs. 42 U.S.C. §§ 9607(a)(1), 9601(20)(A).[1]

The third party complaint was quite specific.[2] Pipefitters alleged that Arst's president and vice president participated in the company's management and exerted direct management control over the company's operations specifically related to the hazardous substance spill. In particular, Pipefitters alleged that the two officers had authority to decide whether Arst would purchase and accept or reject tendered scrap materials for processing at its facility. Further, Pipefitters alleged that the officers had knowingly exercised direct control over the hazardous substance handling at issue; the officers had accepted the load of scrap material that included the PCB-filled electrical transformer and had directed and controlled the employees who cut the transformer open and spilled its contents onto the ground, causing the contamination.

The district court dismissed the third party complaint for failure to state a claim upon which relief might be granted. The court reasoned that the two Arst officers could not, as a matter of law, be liable as CERCLA facility "owners or operators" because the complaint indicated that they did not personally own the facility and because a finding of operator liability could not be made absent allegations that would justify "piercing the corporate veil" under Illinois law.

## II.

We review the grant of a motion to dismiss *de novo*. *Villegas v. Princeton*

---

1. CERCLA provides, *inter alia,* that "the owner and operator of a vessel or facility" shall be liable for cleanup and related costs. 42 U.S.C. § 9607(a)(1). The statute defines "owner or operator" "in the case of an onshore facility ... [as] any person owning or operating such facility ..." 42 U.S.C. § 9601(20)(A). As we stated in *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 861 F.2d 155, 156 (7th Cir.1988), the definition of the term "owner or operator" under CERCLA is circular. "The circularity implies, however, that the statutory terms have their ordinary meanings rather than unusual or technical meanings." *Id.*

   Note also that, as a preliminary matter, Pipefitters alleged that the officers were potentially liable "persons" within the meaning of the statute, 42 U.S.C. § 9601(21), and that the Arst site was an eligible "facility" under the statute, 42 U.S.C. § 9601(9).

2. The key allegations that Michael Arst and Takacs were responsible for the spill were repeated for each count of the complaint:

   13. At all times pertinent to this action, Arst and Takacs *were responsible for the purchase of scrap materials* by Arst Co. [Michael] Arst and Takacs *had the authority to make decisions* regarding which scrap materials Arst Co. *would accept* or reject and *were responsible for the preparation of purchase memoranda and the issuance of checks* to pay for purchased materials. Arst and Takacs were *in charge of operations on the Arst Co. premises,* and Arst and Takacs *directed and controlled the labor force* in the handling, processing and resale of scrap materials.

   14. On or about February 5, 1988, Takacs *accepted delivery* at the Arst site of a transformer which contained PCB material.
   . . . .
   16. Within days after acceptance of the transformer, *Arst Co. employees, subject to the direction and control of Takacs and Arst, cut the transformer with a blow torch causing PCB liquid to spill onto Arst Co. premises,* causing contamination.
   . . . .
   18. These *activities were undertaken with the knowledge, approval and encouragement of Arst Co.,* [Michael] Arst and Takacs. The activities also were consistent with the National Contingency Plan, 40 C.F.R. Part 300, issued pursuant to CERCLA.
   Br.Aplt., App. (Tab B), at 3–5 (emphasis supplied).

*Farms, Inc.*, 893 F.2d 919, 924 (7th Cir.1990); *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 611 (7th Cir.1989). In our review, we take the well-pleaded allegations of the complaint as true, *Reichenberger v. Pritchard*, 660 F.2d 280, 282 (7th Cir.1981); *Janowsky v. United States*, 913 F.2d 393, 395 (7th Cir.1990), and we consider the facts alleged in the light most favorable to the non-moving party. *Henry C. Beck Co. v. Fort Wayne Structural Steel*, 701 F.2d 1221, 1223 (7th Cir.1983). The motion to dismiss for failure to state a claim must receive careful scrutiny and is not often granted. *See Rothner v. City of Chicago*, 929 F.2d 297, 302 (7th Cir. 1991) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (7th Cir.1982).

■ We believe that the district court, which cited the rule requiring well-pleaded allegations, *see Reichenberger*, 660 F.2d at 280, and like cases, was applying the proper standard with respect to this general matter. Still, the court erred in concluding that the scope of CERCLA liability under the facts of this case was strictly constrained by corporate limited liability principles. Of course, it is generally settled that the shareholders, directors and officers of a corporation are not liable for the obligations or delicts of the corporation.[3] But several courts have held that, despite the apparent clash between CERCLA "owner" and "operator" responsibility and the shield protecting corporate officers and directors from responsibility for corporate violations, corporate officers and directors may well be liable as "operators" within the meaning of CERCLA. 42 U.S.C.

§§ 9601(20)(A), 9607(a); *see also, e.g., Riverside Mkt. Dev. Corp. v. International Bldg. Prods., Inc.*, 931 F.2d 327, 330 (5th Cir.1991) ("CERCLA prevents individuals from hiding behind the corporate shield when, as 'operators,' they themselves actually participate in the wrongful conduct prohibited by the Act."); *United States v. Kayser–Roth Corp.*, 910 F.2d 24, 26–27 (1st Cir.1990) (noting cases in which shareholders were held liable as "operators" under CERCLA); *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 743–44 (8th Cir. 1986) (holding that Congress intended CERCLA liability to attach to corporate officers).[4] We agree that the direct, personal liability provided by CERCLA "is distinct from the derivative liability that results from 'piercing the corporate veil ...'" *Riverside*, 931 F.2d at 330 (citing *Northeastern Pharmaceutical*, 810 F.2d at 744). This view is consistent with both the language and the legislative history of CERCLA. As the court noted in *John Boyd Co. v. Boston Gas Co.*, 775 F.Supp. 435 (D.Mass.1991), Congress had at least two important goals when it enacted CERCLA:

> First, Congress intended that the federal government be immediately given the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous waste disposal. Second, Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created.... These statutory goals indicate the corporate form alone will not shield entities that exhibit significant indicia of responsibility from CERCLA liability.

---

3. *See, e.g., Main Bank of Chicago v. Baker*, 86 Ill.2d 188, 56 Ill.Dec. 14, 21, 427 N.E.2d 94, 101 (1981); *Gallagher v. Reconco Builders*, 91 Ill. App.3d 999, 47 Ill.Dec. 555, 559, 415 N.E.2d 560, 564 (1980); *see cf. Klein v. Board of Tax Supervisors*, 282 U.S. 19, 24, 51 S.Ct. 15, 16, 75 L.Ed. 140 (1930) (Holmes, J.) ("[I]t leads nowhere to call a corporation a fiction. If it is a fiction, it is a fiction created by law with intent that it should be acted on as if true.").

4. On the other hand, courts have often been willing to vindicate limited liability principles in cases in which the plaintiffs fail to state with particularity their demand that defendants be held liable as owners or operators. *See, e.g., Cash Energy, Inc. v. Weiner*, 768 F.Supp. 892, 895 (D.Mass.1991) (complaint failed to state whether officers were being charged as "owners" or "operators" and upholding "corporate law principle" that officers must be personally involved to be liable); *see cf. In re Acushnet River & New Bedford Harbor Proceedings*, 675 F.Supp. 22, 34–35 (D.Mass.1987) (finding that corporate parent was separate from subsidiary for liability purposes despite fact that party alleged that subsidiary benefitted from parent's accounting and financial planning systems).

*Id.* at 441; *see also Kayser–Roth,* 910 F.2d at 26 ("Congress, by including a liability category in addition to owner ('operators') connected by the conjunction 'or,' implied that a person who is an operator of a facility is not protected from liability by the legal structure of ownership."). Thus, contrary to the district court's reasoning, there is no insurmountable bar to CERCLA relief provided by the requirements of Illinois law for assessing derivative liability against corporate officers for corporate wrongs.

██ The question remains, then, whether Pipefitters' complaint alleged the kind of direct responsibility that CERCLA contemplates as a basis of liability of "owners" and "operators" of hazardous waste sites. We believe that Pipefitters' complaint is adequate. Pipefitters alleged not only that the Arst officers in question exercised management control over the company's operations, but also that they knowingly exercised direct and personal control over the handling of the hazardous substance at issue in this appeal. Viewing the facts alleged in the light most favorable to Pipefitters, the complaint does, at least, state a claim for CERCLA "operator" liability. Illinois corporate law does not shield from liability the two Arst officers, who allegedly exercised direct control with respect to the PCB spill.

██ We must stress, however, that pleadings seeking CERCLA relief against corporate officers, directors or shareholders must measure up to appropriate standards of pleading. But a complaint may not be dismissed if it contains allegations from which the trier may reasonably infer that evidence on the necessary elements of proof will be adduced at trial. *Yeksigian v. Nappi,* 900 F.2d 101, 102 (7th Cir.1990).[5] Further, the district court has a duty to consider whether a plaintiff's allegations could provide relief under *any* available legal theory. The complaint need not support a viable claim only under the particular legal theory intended by the plaintiff. 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990). Thus, we will affirm the grant of a motion to dismiss only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 102 (1957), *quoted in Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir.1984); *see also Swofford v. Mandrell,* 969 F.2d 547, 549 (7th Cir.1992).

██ Yet even under these liberal pleading standards, a complaint does not automatically state a claim for CERCLA "operator" liability merely by being directed against persons holding management or like positions. In addition, while limited liability doctrines do not preclude CERCLA liability, these corporate law principles may furnish a potential defense.[6] To survive a motion to dismiss a plaintiff must allege that persons associated with the corporation *directly* and *personally* engaged in conduct that led to the specific environmental damage at issue in the case.[7] Without such direct, personal involve-

---

5. Under Rule 8, a complaint need only set out a generalized statement of facts from which the defendant can craft a responsive pleading. Fed. R.Civ.P. 8; *see also* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (2d ed. 1990).

6. Given the liberality of notice pleading, dismissal for failure to state a claim is likely to be granted only where the complaint shows some bar to relief on its face, or when the complaint's allegations indicate the existence of an affirmative defense. *See, e.g., Lister v. Stark,* 890 F.2d 941, 946 (7th Cir.1989) (preemption a bar); *cf. American Nurses' Ass'n v. Illinois,* 783 F.2d 716, 724 (7th Cir.1986) ("A plaintiff who files a long and detailed complaint may plead himself out of court by including factual allegations which if true show that his legal rights were not invaded."). For other cases that suggest that a plain-

tiff may plead facts sufficient to establish that he cannot prevail, *see Trevino v. Union Pac. R. Co.,* 916 F.2d 1230, 1234 (7th Cir.1990); *Stewart v. RCA Corp.,* 790 F.2d 624, 632 (7th Cir.1986); *Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 915 (7th Cir.1985).

7. This is the approach taken in *Cash Energy, Inc. v. Weiner,* 768 F.Supp. at 895. We decline, however, to adopt the pleading particularity requirements suggested in that case, which arose in the context of fraud. *Id.* at 897; Fed.R.Civ.P. 9(b). The Supreme Court has been reluctant to expand such requirements beyond the fraud context. *See, e.g., Leatherman v. Tarrant County Narcotics Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993) (federal court may not apply pleading requirements more stringent than those in Fed.R.Civ.P. 8 in civil rights cases alleg-

ment, the corporation and not the associated individuals must be regarded as owning or operating the hazardous waste site in question. It would certainly be unreasonable to infer simply from general allegations of corporate ownership or operation of a waste site that individuals acting on the corporation's behalf are themselves liable. Thus, a plaintiff does not state a claim for owner or operator liability if she merely alleges that certain individuals had general corporate authority or served generally in a supervisory capacity. Active participation in, or exercise of specific control of, the activities in question must be shown.

### III.

Obviously, the sustaining of a complaint falls distinctly short of the establishment of liability. The issue whether the involvement of the two officers in the PCB spill was direct and personal (and not merely a product of respondeat superior) remains to be decided. If the two Arst officers were directly and personally involved in the spill, they may be held to account. The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

ing municipal liability under 42 U.S.C. § 1983); *see also CBS, Inc. v. Henkin,* 803 F.Supp. 1426, 1432 (N.D.Ind.1992) (noting that several courts have held that CERCLA pleading is governed by Fed.R.Civ.P. 8, not Rule 9).