**Jerold M. GORSKI and Peggy J. Gorski, Plaintiffs–Appellants,**

v.

**Stanley TROY and Shirley Troy, doing business as S & S Rentals, Defendants–Appellees.**

**No. 89–3675.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 1990.

Decided April 11, 1991.

---

Roberta L. Holzwarth, Michael D. Slates, Holmstrom & Kennedy, Rockford, Ill., for plaintiffs-appellants.

Ann E. Fleischli, Madison, Wis., for defendants-appellees.

Jerald S. Post, Robert J. Ruiz, Asst. Attys. Gen., Office of the Atty. Gen., Chicago, Ill., for amicus curiae, Neil F. Hartigan.

John R. Dunne, Asst. Atty. Gen., Jessica Dunsay Silver, Linda F. Thome, Dept. of Justice, Civ. Rights Div., Appellate Section, Washington, D.C., for amicus curiae, U.S.

Before WOOD, Jr., CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiffs wanted to become foster parents and began the licensing process necessary to attain that status in Illinois. As part of their efforts, plaintiffs sought permission from their landlord, as their lease required, to have children live in their apartment. The landlord refused permission and subsequently served notice to vacate. The plaintiffs filed suit alleging violations of the Fair Housing Act. The district court granted the landlord's motion to dismiss for lack of standing. The plaintiffs appealed. Because this case presents important questions concerning the administration of the Fair Housing Act and the Illinois Foster Parent Program, we requested that the United States and the State of Illinois, through their respective attorneys-general, participate as *amici curiae* and we have had the benefit of briefs of both these officers. For the following

reasons, we reverse the judgment of the district court and remand for further proceedings.

# I
# BACKGROUND

## A. *Statutory Scheme*

This appeal presents, in part, a question of first impression concerning the scope and application of the 1988 amendments to the Fair Housing Act ("FHA" or "the Act").[1] The amendments added several provisions to the FHA. The definition of an "aggrieved person" was amended to provide:

"Aggrieved person" includes any person who—

(1) claims to have been injured by a discriminatory housing practice; or

(2) believes that such person will be injured by a discriminatory housing practice that is about to occur.

42 U.S.C. § 3602(i). The amendments also added "familial status" to the list of prohibited bases for refusing to rent a dwelling to a person. Thus, section 3604 declares it unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make

1. The 1988 amendments became effective on March 12, 1989. *See* 42 U.S.C. § 3601 (notes).

any such preference, limitation, or discrimination.

*Id.* § 3604(a)–(c). And the amendments define "familial status":

"Familial status" means one or more individuals (who have not attained the age of 18 years) being domiciled with—

(1) a parent or another person having legal custody of such individual or individuals; or

(2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.

The protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years.

*Id.* § 3602(k). Finally, section 3617 provides:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section ... 3604

. . . .

*Id.* § 3617.

## B. *Facts*

Jerold and Peggy Gorski signed a month-to-month lease for a two-bedroom apartment in a building owned by Stanley and Shirley Troy on August 17, 1988. By the terms of the lease, the apartment could be occupied by "no more than two (2) adults and no[ ] children ... without the prior written consent of the Owner." Appellants' App. at 8. On January 3, 1989, the Gorskis entered into the Foster Care Program with the Illinois Department of Children and Family Services (DCFS) in order to become foster parents. The Gorskis attended the required number of training sessions, and, on February 7, 1989, they completed the training program.

On January 5, 1989, the Gorskis wrote to the Troys and requested permission to take one or two foster children into their home. The Troys orally denied their request on January 14, 1989.[2] Thereafter, the Gorskis asked for a written response, which came in the form of a letter on March 22, 1989. The Troys explained in the letter that they permitted children only in first floor apartments (the Gorskis lived on the second floor). Moreover, the letter reviewed other disputes between the parties and concluded that the Gorskis were "not happy living in our apartment building and probably never will be," and gave them thirty days' notice to vacate the apartment. Appellants' App. at 11. The parties dispute the reason for the eviction. The Troys contend that the Gorskis' eviction resulted from a number of other problems with their tenancy, not from their request to have foster children. Nevertheless, on an appeal from a motion to dismiss, we must assume the truth of the Gorskis' allegation that they were evicted because of their request to have foster children. *See Janowsky v. United States*, 913 F.2d 393, 395 (7th Cir.1990). At no time during these events did the Gorskis have foster children living with them.

## C. *Holding of the District Court*

On April 28, 1989, the Gorskis brought this action against the Troys for violating sections 804 and 817 of the FHA, 42 U.S.C. §§ 3604, 3617, and sought damages and injunctive relief. The Gorskis claimed that the Troys had violated the FHA by refusing to continue renting to them because of their "familial status." The Gorskis supported their claims by referring to the close proximity in time between the Gorskis' request to have foster children live with them and the Troys' eviction notice. In addition, the Gorskis proffered certain allegedly discriminatory statements made by the Troys, which demonstrated their discriminatory motive. On May 10, 1989, the Gorskis moved for a preliminary injunction. The Troys moved to dismiss. After an

---

**2.** Mr. Gorski testified that Mrs. Troy said that the apartment was inappropriate for children and that she did not want "that sort of thing going on." Tr. of May 19, 1989 at 9.

evidentiary hearing on both motions, the district court granted the Troys' motion.

The district court ruled that the familial status provisions of the FHA did not cover the Gorskis' situation. Without deciding whether foster parents could ever be covered by the provision, the court held that the Gorskis were not covered because they were not in the process of obtaining legal custody of a child at the time of the Troys' challenged actions, nor had authorities told them that they were being assigned a child. *See Gorski v. Troy*, 714 F.Supp. 367, 368 (N.D.Ill.1989). The court compared the Gorskis' status to that of a couple that is fertile, but not yet expecting a child:

> In short, there is no evidence or allegations that the plaintiffs, while able to become foster parents, were becoming foster parents. By comparison, a fertile couple, while capable of attaining familial status, is distinct for purposes of the Fair Housing Act from a pregnant mother who does qualify for familial status. The Gorskis were only licensed to house foster children and thus no different than any other couple, or any individual, for that matter, with the potential of securing legal custody over a child.

*Id.* Thus, the court concluded that the Gorskis lacked standing to sue under the FHA and dismissed their complaint. The Gorskis filed a timely notice of appeal. Following oral argument, we invited the Attorney General of the United States and the Attorney General of Illinois to submit *amicus curiae* briefs presenting their views of the applicability of the FHA and the 1988 amendments to foster parents program applicants such as the Gorskis.

## II

## ANALYSIS

### A. *Guiding Principles*

We review the grant of a motion to dismiss *de novo*. *See Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 924 (7th Cir.1990); *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 611 (7th Cir.1989). It is well settled that, when reviewing the grant of a motion to dismiss, we must assume the truth of all well-pleaded factual allegations and make all possible inferences in favor of the plaintiff. *See Janowsky v. United States*, 913 F.2d 393, 395 (7th Cir.1990); *Rogers v. United States*, 902 F.2d 1268, 1269 (7th Cir.1990). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

This case requires us to examine the doctrine of standing in relationship to the FHA and the 1988 amendments.

> "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations in its exercise.... In both dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society."

*Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975)). The constitutional limitation eliminates those cases in which a plaintiff can demonstrate no "case or controversy" between himself and the defendant. To satisfy Article III, "the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Id.* 441 U.S. at 99, 99 S.Ct. at 1607–08; *see Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629–30, 57 L.Ed.2d 595 (1978). The prudential limits on standing eliminate those cases "where no individual rights would be vindicated" and restrict "access to the federal courts to those litigants best suited to assert a particular claim." 441 U.S. at 100, 99 S.Ct. at 1608. Accordingly, a plaintiff must "assert an injury that is peculiar to himself or to a distinct group of which he is a part" and must "assert his own legal interests, rather than those of third parties." *Id.* (footnote

omitted). However, as we discuss below, Congress may legislatively "expand standing to the full extent permitted by Art. III, thus permitting litigation by one 'who otherwise would be barred by prudential standing rules.'" *Id.* (quoting *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206). With these principles in mind, we turn to the issue presented by this case.[3]

## B. *The Status of Foster Parents Under the FHA*

■ The Troys contend on appeal, and the district court ruled, that the Gorskis lack standing to sue. In order to resolve this matter, we must address an issue that the district court declined to decide: whether foster parents are protected by the FHA.[4] The plain language[5] of the Act convinces us that foster parents licensed in Illinois are protected by the FHA from discrimination on the basis of familial status. The definition of familial status specifically includes the "designee" of parents or other persons having custody of children. *See* 42 U.S.C. § 3602(k)(2). Pursuant to Illinois law, the DCFS is the legal custodian of a child committed to its care. *See* Ill.Stat., ch. 37, ¶¶ 802–27(3), 801–3(8)–(9). DCFS, in turn, may place the child in licensed child care facilities, including foster homes. *See* Ill.Stat., ch. 23, ¶ 2212.17. The term designee was left undefined by Congress, but after reviewing the legal status and responsibilities of the DCFS, as well as that of foster parents, we agree with the Illinois Attorney General that "[i]n Illinois, a foster parent clearly is … a designee of the [DCFS]." Brief for *Amicus Curiae,* Attorney General of Illinois, at 9. The United States Attorney General's position is also in accordance with this conclusion. *See* Brief for *Amicus Curiae,* United States Attorney General, at 5. Therefore, we conclude that the FHA provides foster parents protection from discrimination based on familial status.

## C. *The Gorskis' Standing under the FHA*

■ Contrary to the district court's assumption, 714 F.Supp. at 368, the Gorskis are not yet licensed foster parents. In response to questioning at oral argument, counsel for the Gorskis indicated that the Gorskis were not licensed at the time of these events. Apparently, before the Gorskis could be licensed, DCFS had to inspect and approve the Gorskis' apartment as a satisfactory dwelling place for foster children.[6] According to the Gorskis' coun-

---

**3.** The Troys assert that we lack jurisdiction to hear this case. The district court's original order dismissed "this case." Perceiving the order as final, the Gorskis appealed to this court. The district court subsequently clarified its order and indicated that the Troys' counterclaim still remained. The Gorskis moved this court for voluntary dismissal, which the court granted with prejudice. The Troys then voluntarily withdrew their counterclaim, and the Gorskis filed their present appeal before this court. The Troys contend that, because we dismissed the Gorskis' first appeal with prejudice, they cannot now return before this court. The Troys cite no supporting authority. The Troys previously advanced this identical argument before us in their "Motion for Costs and Attorney's Fees and Motion for Finding of No Jurisdiction." We did not accept the argument then, nor do we now. *See* Order, *Gorski v. Troy,* No. 89–3675 (Jan. 16, 1990) (Appellees' App. at 3).

**4.** Our research reveals no other court that has addressed this issue. The Third Circuit and a district court in New York have grappled with the task of interpreting the "familial status" provision contained in the 1988 amendments, but in different contexts from that which we face. *See Doe v. City of Butler,* 892 F.2d 315, 323–24 (3d Cir.1989) (case remanded for determination of whether zoning regulation limiting transitional dwellings to six persons violated familial status provision); *Glover v. Crestwood Lake Section 1 Holding Corps.,* 746 F.Supp. 301, 310 (S.D. N.Y.1990) (policy of apartment complex that barred single parent with one child from occupying one-bedroom apartment while allowing two adults to share a one-bedroom apartment discriminated based on familial status).

**5.** We have repeatedly held that, in cases of statutory interpretation, "[o]ur starting point must be the language of the statute." *Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1326 (7th Cir. 1990). If the statute is unambiguous, we must enforce the plain meaning of the congressional intent embodied in that plain wording. *Id.; United States v. Real Estate Known as 916 Douglas Ave.,* 903 F.2d 490, 492 (7th Cir.1990). In this case, the FHA and the 1988 amendments define the terms and provide the framework relevant to our analysis.

**6.** *See* Ill.Stat., ch. 23, ¶ 2215(b).

sel, after the Troys refused permission, the Gorskis pursued this litigation and held in abeyance their efforts to have their apartment approved by DCFS.

The Gorskis' ability to sue, however, does not rest exclusively on their having attained familial status. While the FHA uses the definition of "familial status" to define what constitutes prohibited housing discrimination, it does not limit standing to persons within the class defined by that term. Section 3613 provides that "an aggrieved person may commence a civil action" in an appropriate court. 42 U.S.C. § 3613(a)(1)(A).[7] The Act does not define "aggrieved person" in terms of familial status.

"Aggrieved Person" includes any person who—

(1) claims to have been injured by a discriminatory housing practice; or

(2) believes that such person will be injured by a discriminatory housing practice that is about to occur.

*Id.* § 3602(i).

In amending the definition of "aggrieved person," Congress intended to extend broad standing principles to those seeking redress under the FHA.[8] The House Judiciary Committee commented that the term "aggrieved persons" in the 1988 amendments "adopts as its definition language similar to that contained in ... existing law, as modified to reaffirm the broad holdings of [the Supreme Court's decisions in *Gladstone* and *Havens Realty*]." H.R. Rep. No. 711, *reprinted in* 1988 U.S.Code Cong. & Admin.News 2173, 2184 (1988). In *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), the Court held that, because Congress intended standing under the FHA "to extend to the full limits of Art. III, the normal prudential rules do not apply[.] [A]s long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed." *Id.* at 103 n. 9, 99 S.Ct. at 1609–10 n. 9. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), reaffirmed this principle. The Court held that the *only* requirement for standing to sue under the FHA "is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury[.]'" *Id.* at 372, 102 S.Ct. at 1120–21 (quoting *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206).[9]

Both *Gladstone* and *Havens Realty* exemplify the Court's recognition of the congressional intent to apply broad standing principles under the Act. For example, in *Gladstone*, a village and five of its residents (one black and four white) challenged allegedly unlawful steering practices of real estate brokers. Although neither the

---

7. The Troys contend that the Gorskis are foreclosed from relying on the "aggrieved person" provision of the FHA because they failed to so plead. As the Troys concede, however, the district court considered the argument and still denied standing. Moreover, the Gorskis pled section 3613—the aggrieved person section—in their prayer for relief. *See* R.1 at 9. Thus, the provision was presented before the district court, and the Gorskis can and do rely on it before this court.

8. *See Favors v. MAQ Management Corp.*, 753 F.Supp. 941, 944 (N.D.Ga.1990) (commenting on plaintiff's ability to sue under the new "aggrieved person" provision, court stated, "[w]ith the 1988 amendments to the Fair Housing Act, Congress intended to improve private persons' ability to enforce the anti-discriminatory proscriptions contained in the statute"); *see also United States Dep't of Hous. & Urban Dev. ex rel. Herron v. Blackwell*, 908 F.2d 864, 873 (11th Cir.

1990) (white tenants displaced as result of injunction prohibiting landlord from renting or selling to anyone except black family who originally contracted to purchase house were "aggrieved persons" under 1988 amendments).

9. On prior occasions, we have recognized the broad standing principles embodied in the FHA. *See, e.g., Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1525–27 (7th Cir.1990); *Southend Neighborhood Improvement Ass'n v. County of St. Clair*, 743 F.2d 1207, 1209 (7th Cir.1984); *Alschuler v. Department of Hous. & Urban Dev.*, 686 F.2d 472, 476–77 (7th Cir.1982); *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1289 (7th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978). *But cf. Hope, Inc. v. County of Du Page*, 738 F.2d 797, 815 (7th Cir.1984) (plaintiffs lacked standing because they failed to allege specific and particular discriminatory activity violating their rights).

village nor the white residents were the subjects of discrimination, the Court held that they had standing to sue. The village had standing because it sustained injury as a result of reduced property values and the concomitant diminished tax base. *Id.* 441 U.S. at 110–11, 99 S.Ct. at 1613–14. The white residents were injured because they were deprived of the "social and professional benefits" of living in integrated neighborhoods and because of diminution in the value of their homes. *Id.* at 115, 99 S.Ct. at 1615–16. Concerning the white residents' injury, the Court stated:

> That respondents themselves are not granted substantive rights by § 804 ... hardly determines whether they may sue to enforce the § 804 rights of others. If, as is demonstrated in the text, Congress intended standing under § 812 to extend to the full limits of Art. III, the normal prudential rules do not apply; as long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed. The central issue at this stage of the proceedings is not who possesses the legal rights protected by § 804, but whether respondents were genuinely injured by conduct that violates *someone's* § 804 rights, and thus are entitled to seek redress of that harm under § 812.

*Id.* at 103 n. 9, 99 S.Ct. at 1609–10 n. 9 (emphasis in original). In *Havens Realty,* the Supreme Court held that a non-profit organization that challenged racial steering practices by a local realtor had standing. The organization was injured because it expended resources to combat discrimination and, as a result of the defendant's actions, its counselling and referral services were frustrated. 455 U.S. at 369, 102 S.Ct. at 1119.

These cases make clear, and the Supreme Court has explicitly held, that a plaintiff suing pursuant to the FHA need not be a member of the class that was the object of discrimination to satisfy the injury-in-fact requirement. *See Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 208–09, 93 S.Ct. 364, 366–67, 34 L.Ed.2d 415 (1972). Indeed, in *Trafficante,* one plaintiff was a white individual who contested the defendant's racially discriminatory practices directed toward nonwhites. *Id.* at 206–07, 93 S.Ct. at 365–66. The Court noted the importance of the "benefits from interracial associations," and concluded that such an injury was sufficient to satisfy the standing requirements of actual or threatened harm under section 810, a predecessor to the present "aggrieved person" provision in the 1988 amendments. *See id.* at 210, 93 S.Ct. at 367.

In accordance with these principles, the Illinois Attorney General submits that "even if this court finds that the Gorskis are not within the class defined by the term 'familial status,' the actions alleged to have been committed by the Troys discriminated against persons within that class and caused a distinct and palpable injury to the Gorskis." Brief for *Amicus Curiae,* Attorney General of Illinois, at 9. Likewise, the United States Attorney General submits that "even if [the Gorskis] are not within the class protected by the statute, they still had standing, since suits under the Fair Housing Act may be brought by any person claiming injury by a prohibited practice." Brief for *Amicus Curiae,* United States Attorney General, at 13.

We agree that this case hardly requires that we fine tune definitively the FHA's protection with respect to "familial status." Here, the alleged injuries are stark: the complaint alleges that the Gorskis were evicted from their apartment because of their attempt to qualify as foster parents. This allegation is sufficient to give the Gorskis standing because, in the words of the governing statute, they are persons who "claim[ ] to have been injured by a discriminating housing practice." 42 U.S.C. § 3602(i)(1). Even if we assume, *arguendo,* that the Gorskis had not yet achieved "familial status" as that term is defined in the Act, the Troys' alleged actions, at the very least, still were discriminatory because the Troys expressed a preference for tenants on the basis of familial status in violation of section 3604(c) and, in violation of section 3617, retaliated against the Gorskis when the couple attempted to

have the discriminatory policy changed. These activities clearly were the source of the Gorskis' alleged injury.

Moreover, by informing the Gorskis of their discriminatory policy and of their intention to enforce it, the Troys made it clear that, should the Gorskis bring a child into their home (at which time, as we have already discussed, they clearly would be protected by the "familial status" clause of the Act), they would not be allowed to remain in their apartment. At that point, it can be argued that the Troys effectively and intentionally excluded children from the dwelling. At the very least, such activity provides the Gorskis with standing as persons who "believe[ ] that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i)(2).

## Conclusion

In sum, we believe that the allegations of the complaint, when measured against the specific statutory standing requirements of the FHA, establish that the plaintiffs have alleged sufficient injury to proceed with this litigation. We express no opinion, of course, on the merits of the case. Accordingly, the judgment of the district court must be reversed and the case remanded for further proceedings.

REVERSED AND REMANDED.