**Ruben PENA, Plaintiff,**

v.

**Edward MATTOX, Charles Bretz, Patricia Schneider, and Unknown Others, Defendants.**

No. 94 C 3845.

United States District Court, N.D. Illinois, Eastern Division.

March 29, 1995.

Thomas M. Peters, Richard A. Halprin, Susan A. Shatz, Chicago, IL, for Ruben Pena.

John L. Martin, James L. Tuohy, James M. Urtis, Tuohy & Martin, Ltd., Chicago, IL, William W. Kurnik, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, IL, for Edward–Mattox.

James Robert Schirott, Phillip Anthony Luetkehans, Mary Elizabeth Dickson, Schirott & Luetkehans, P.C., Itasca, IL, for Charles Bretz.

Michael William Condon, Hervas, Sotos & Condon, P.C., Itasca, IL, for Patricia Schneider.

### MEMORANDUM AND ORDER

MAROVICH, Judge.

Plaintiff Ruben Pena's ("Pena") Complaint alleges state law claims for abuse of process, malicious prosecution, and for violation of his parental rights under the Illinois Constitution. Pena also alleges civil rights claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) claiming that the Defendants conspired to deprive him of his constitutionally protected parental rights. Defendants move to dismiss the Complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, the Court will grant the Defendants' motion to dismiss Pena's constitutional claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) and will dismiss the remaining state law claims without prejudice.

### BACKGROUND

For purposes of Defendants' motion to dismiss, the Court accepts as true the following factual allegations taken from Pena's Complaint. Amanda Mattox is the daughter of Defendant Edward Mattox. Pena, age 19 at the time, and Amanda Mattox, then age 15, began dating in late 1991. In August 1992, Amanda told Pena she thought she was pregnant. In November of 1992, Amanda's aunt, Defendant Patricia Schneider, had Amanda take a home pregnancy test; the test confirmed Amanda's pregnancy. After learning of Amanda's pregnancy her parents prohibited her from seeing the Plaintiff. Pena and

Amanda continued to see one another against her parents' wishes.

On December 8, 1992, Amanda phoned Pena and told him she felt sick. Pena visited Amanda and asked her to tell her parents that she felt sick. Thereafter, Pena phoned Amanda's house seeking information about Amanda. However, no one at the Mattox house would tell Pena anything about Amanda.

Near midnight on December 9, 1992, Defendant Mattox phoned Pena and asked to meet with him. Pena went to the restaurant which Mattox had suggested. While waiting for Mattox to arrive at the restaurant, Pena was arrested. Pena was arrested on a felony criminal complaint, signed by Mattox. The criminal complaint contained false allegations, in that it stated that Pena, "knowingly committed an act of sexual penetration, to wit: sexual intercourse, with Amanda J. Mattox, a person who was at least 13 years of age but under 17, at the time when Defendant was at least 5 years older than Amanda J. Mattox."

Pena alleges that on the date Mattox signed the criminal complaint, December 9, 1992, and swore under oath that the charge was true, Mattox knew that Pena was not five years older than Amanda. Pena also alleges, on information and belief, that Defendant Bretz, an Assistant State's Attorney for Will County, drafted and authorized the complaint; and knew prior to drafting the complaint that Pena was not five years older than Amanda.

The arrest warrant issued by Judge Masters, in conjunction with the criminal complaint, set Pena's bail at $30,000. After learning of the arrest, Chris DeCamp, Pena's sister, telephoned the Mattox residence. Defendant Schneider answered DeCamp's call. Schneider identified herself as a judge[1] and told Chris DeCamp not to call the Mattox house again. Schneider told her that Pena's bail would be raised the next day. The next day, December 10, 1992, Defendant Bretz directed Assistant State's Attorney Martina Kulick to seek an increase in Pena's bail. On that day, Pena's bail was raised to $45,000.

Neither Pena nor his family could raise the money for the bail.

On December 11, 1992, Defendant Bretz reduced the felony charge against Pena to a misdemeanor. Pena pled guilty to the misdemeanor, received 24 months supervision and was released from jail that same day. As a condition of his release, Pena was ordered to "have no contact with Amanda J. Mattox or any member of her immediate family" effective until April 19, 1994. Immediately after being released from jail, Pena left Illinois allegedly out of fear that Defendants would "continue to exert improper influence with the Sheriff's Department, State's Attorneys Office and the Judiciary if he remained in Illinois."

Pena alleges that while he was in custody, Amanda was taken to Indiana on or about December 9, 1992 to give birth. The child was then placed for adoption in Indiana. Pena was neither informed that Amanda gave birth nor did he consent to the adoption.

## DISCUSSION

■■■ When considering a motion to dismiss, the court assumes the truth of all well-pled factual allegations and makes all possible inferences in favor of the plaintiff. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir.1993). A court should not dismiss a complaint unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Ross v. Creighton University*, 957 F.2d 410, 413 (7th Cir.1992); *Gorski v. Troy*, 929 F.2d 1183, 1186 (7th Cir.1991). However, a plaintiff must allege sufficient facts in the complaint to outline the elements of a cause of action, *Ellsworth v. Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986), and only factual allegations will be considered because the plaintiff's legal conclusions are not binding on the court. *Reichenberger v. Pritchard*, 660 F.2d 280, 282 (7th Cir.1981). With these liberal standards

---

1. At the time, Defendant Schneider served as a judge on the Will County Circuit Court.

in mind, the Court proceeds to address the central constitutional issue in this case.[2]

### Pena's Parental Rights

■ Ruben Pena wanted to be a father and he lost that opportunity as his child was placed for adoption in Indiana. Pena seeks recovery for that loss under the Due Process Clause. Initially, we must identify the liberty interest at stake here. The relationships that develop within a family and the relationship between parent and child are accorded a tremendous degree of respect and sanctity in the history and laws of this Nation. *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972). At the same time, the Supreme Court has also noted that the substantive due process rights of an unwed father may be curtailed in certain circumstances without running afoul of the Constitution. *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *see also Allen v. Allen,* 48 F.3d 259 (7th Cir.1995).

Defendants concede that traditionally the parent-child relationship involves a fundamental liberty interest protected by the Due Process Clause. Defendants argue, however, that more than a biological relationship is required before Pena is entitled to the full measure of constitutional protections. Pena responds that Defendants' actions deprived him of the opportunity to establish a bond with his child. Defendants also focus on the availability of state remedies in both Indiana and Illinois that they contend provide all of the process which is due to the Plaintiff.

■ "The intangible fibers that connect parent and child have infinite variety.... It is self-evident that they are sufficiently vital to merit constitutional protection in appropriate cases." *Lehr v. Robertson,* 463 U.S. 248, 256, 103 S.Ct. 2985, 2990, 77 L.Ed.2d 614 (1983). While state laws typically and appropriately favor the formal family and the bonds of marriage, an unwed father may find some protection in the Constitution. As stated in *Lehr:*

> When an unwed father demonstrates a full commitment to the responsibilities of par-

enthood by coming forward to participate in the rearing of his child his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he acts as a father toward his children. But the mere existence of a biological link does not merit equivalent constitutional protection.

*Id.* at 261, 103 S.Ct. at 2993 (internal citations and quotations omitted); *see also Michael H. v. Gerald D.,* 491 U.S. 110, 129, 109 S.Ct. 2333, 2345, 105 L.Ed.2d 91 (1989). Although Pena clearly has established no link with his child beyond the biological link, the *Lehr* Court assumed that the Constitution might require some protection for the unwed father's "opportunity" to establish a parent-child relationship.

■ As is clear from a long line of cases before the Supreme Court, the Constitution accords substantial protections to the family unit against efforts to disrupt or alter the relationships of members of that unit. In this case, however, we are presented with a situation that brings several concepts into conflict where no recognized or established unitary family has come into being. On one hand, the Mattox family has an undeniably significant interest in the care, custody, and supervision of an unmarried, unemancipated minor child, Amanda. On the other hand, Pena argues that he has an important interest as a biological father in establishing and maintaining a relationship with his child. In addition, this case involves a confrontation between Pena's interest as a biological father and the public policy of Illinois and Indiana which have both chosen to criminalize certain sexual conduct when minors are involved. To resolve these conflicts and the pending motions, this Court must examine the procedures available to Pena and Defendants' alleged actions to thwart Pena in asserting and establishing his parental rights.

As the Supreme Court aptly explained in *Lehr,* 463 U.S. at 262, 103 S.Ct. at 2993–94.

> the significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to

---

**2.** Because the analysis of Pena's constitutional claim is dispositive, the Court need not consider the various other arguments raised by Defendants.

develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie.

In *Lehr,* the question before the Court was whether a natural father could block the adoption of his child by the unwed mother's new husband when he complained he had no notice of the adoption proceedings, a situation bearing some similarity to the present case before this Court. The *Lehr* Court noted that the father could have guaranteed receipt of notice had he participated in the putative father registry offered by New York statute. The Court observed that the "most effective protection of the putative father's opportunity to develop a relationship with his child is provided by the laws that authorize formal marriage and govern its consequences." *Id.* at 263, 103 S.Ct. at 2994. We know in this case that Amanda's age prevented a valid marriage in Illinois, see 750 ILCS 5/203(1), and can safely assume that the parental consent required for marriage, even if Amanda were 16, was not forthcoming in this case. In the absence of marriage as a viable option, the putative father must turn to other mechanisms provided by the state to gain legal recognition of his status and to transform the opportunity of biological parentage into the reality of fatherhood.

The Seventh Circuit recently confronted these same issues. In *Allen v. Allen,* 48 F.3d 259 (7th Cir.1995), Randall Allen, the biological father of Hanna Allen, sought relief for his exclusion from underlying state court proceedings concerning the custody of Hanna and visitation rights of defendant Hickenbottom with Hanna. Hanna was born during the previous marriage of Allen's wife to Hickenbottom. Plaintiff did not establish his paternity until some 35 months after Hanna's birth, when he filed a petition to adopt Han-

na. Initially, the Seventh Circuit reaffirmed the longstanding rule that domestic disputes involving divorce, custody or alimony issues are the province of state courts and stated: "[Plaintiff's] amorphous constitutional claims are "inextricably intertwined" with these matters that escape our jurisdiction." *Id.* at 262.

The court further determined that if they did have jurisdiction over the case, they would have concluded that Allen's assorted claims lacked merit. In so holding, the Seventh Circuit stated:

> Allen cites no constitutional infirmity in his exclusion from the underlying state proceedings or in the proceedings themselves, and we discern none. The substantive due process rights Allen, an unwed father, possesses can constitutionally be curtailed by his failure to take affirmative steps to secure them. Allen suffered no deprivation of any kind until he failed to establish his parentage according to Illinois state law procedures. *Id.*

In keeping with *Allen* and the Supreme Court decisions that preceded that opinion, we now must determine the remedies that were available to Pena under Illinois and Indiana law.

Under the Illinois Parentage Act of 1984, Pena could have brought an action to determine whether a father-child relationship existed. The relevant statutory provision, 750 ILCS 45/7(a), provides:

> Determination of Father and Child Relationship; Who May Bring Action; Parties. (a) An action to determine the existence of the father and child relationship, whether or not such a relationship is already presumed under Section 5 of this Act, may be brought by . . . a man presumed or alleging himself to be the father of the child or expected child. The complaint shall be verified and shall name the person or persons alleged to be the father of the child.

Under Illinois statute, 750 ILCS 45/7(e),[3] Pena was allowed to commence the paternity action prior to the birth of the child.

---

**3.** 750 ILCS 45/7(e) provides: "If an action under this Section is brought before the birth of the child, all proceedings shall be stayed until after

the birth, except for service or process, the taking of depositions to perpetuate testimony, and

Pena could have initiated a paternity action as soon as he suspected Amanda's pregnancy in August 1992, or as soon as he faced opposition from her parents in November 1992. Pena, however, did not do so. If Pena had established the father-child relationship under 750 ILCS 45/7(a), the judgment rendered would contain or explicitly reserve provisions concerning any duty and amount of child support and could have contained provisions concerning the custody and guardianship of the child, and visitation privileges with the child. 750 ILCS 45/14(a)(1). In short, Pena could have initiated the process of establishing his rights as a father prior to the birth of the child, thus enabling him to use the court and its procedures to learn of the child's birth and to prevent the initiation of proceedings which would conflict with the jurisdiction of the Illinois court.

If Pena had obtained a judgment containing provisions concerning the custody and guardianship of the child, according to 28 U.S.C. § 1738A, Indiana courts would have been obliged to give full faith and credit to the child custody determination of the Illinois court provided certain conditions were satisfied. *See Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (holding that 28 U.S.C. § 1738A effectively imposes duty upon states to accord full faith and credit to custody or visitation determinations made in accordance with standards derived from the Uniform Child Custody Jurisdiction Act). Section 1738A provides in part:

> The appropriate authorities of every state shall enforce according to its terms, and shall not modify any custody determination

made consistent with the provisions of this section by a court of another state.

Further, if Pena initiated an action in Illinois to establish the father-child relationship, the Uniform Child Custody Jurisdiction Law of Indiana [4] provides further protection against an Indiana court exercising jurisdiction over an action where another case is already pending in another state.

According to Pena, he has no remedies under Indiana law. Pena alleges that under Indiana law, Ind.Code § 31–3–1–6(i)(2)(B)(ii), he was deprived of the opportunity to intervene in the adoption of his child. Indiana Code § 31–3–1–6(i)(2)(B)(ii) indicates that consent to adoption of a child is not required from "[t]he biological father of ... (B) A child who was conceived as a result of ... (ii) child molesting (IC 35–42–4–3)." Under Indiana law, IC 35–42–4–3(c), "A person sixteen years of age or older who, with a child of twelve years of age or older but under sixteen years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting." Pena does not appear to dispute that under this definition, he did commit an act of child molestation under Indiana law.[5]

The Indiana Appellate Court has interpreted this portion of the Indiana adoption law so as not to require a conviction before the biological father's consent is deemed unnecessary. In *Mullis v. Kinder*, 568 N.E.2d 1087 (Ind.Ct.App.1991), the Indiana Appellate Court strictly construed the adoption consent statute. In *Mullis*, the fifteen year old and Kinder, age twenty-one, engaged in sexual intercourse resulting in the conception

the ordering of blood tests under appropriate circumstances."

4. The pertinent section of the Uniform Child Custody Jurisdiction Law of Indiana, Ind.Code § 31–1–11.6–6, provides:

A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state.

5. While we have noted in this case that the Constitution provides some protection for an unwed biological father's efforts to grasp the unique opportunity of fatherhood explained in *Lehr*, it is by no means certain that a biological

father who conceives a child with a minor in violation of state criminal law would have any liberty interest in establishing a relationship with that child. Pena relies heavily on the general proposition that the parent-child relationship is protected by the Constitution but offers no support for any tradition of protection of that relationship when it is the result of a criminal act. As the Supreme Court stated in another context in *Michael H.*, "[t]his is not the stuff of which fundamental rights qualifying as liberty interests are made." 491 U.S. at 127, 109 S.Ct. at 2344. While these considerations weigh heavily against Pena, we have assumed for present purposes, as did the *Lehr* Court, that the Constitution would provide some protection for Pena as a biological father.

of a child. The child was born and the biological mother signed a Consent to Adoption revealing that she did not know the whereabouts of Kinder, the father. Shortly thereafter, Kinder filed a motion to contest the adoption and a petition for paternity. The Court held that although Kinder had not been convicted of child molesting he admitted to it through deposition testimony, and, therefore, his consent was not required for an adoption to occur. *Id.* at 1090. Under *Mullis,* it would appear that Pena's consent was not necessary although he may still have been entitled to notice under Ind.Code § 31–3–1–6(j).

It is important to note that this Court does not measure the constitutional interests present in this case by asking whether Pena could have *successfully* established and protected his parental rights, however defined or limited. In the proper analysis, our focus is on the process established and available to Pena to assert his rights in Illinois and Indiana, not on whether Pena could have succeeded in obtaining custody, visitation or any other rights of a parent. With this observation in mind, we now turn to the procedures available to Pena in Indiana.

The Seventh Circuit has had occasion to consider the procedures available under Indiana law in *Ellis v. Hamilton,* 669 F.2d 510 (7th Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). In *Ellis,* plaintiffs filed suit under 42 U.S.C. § 1983 claiming that their rights under the due process clause of the Fourteenth Amendment were violated by several welfare and judicial officers in connection with proceedings that led to the plaintiffs' grandchildren being removed from their home and adopted by strangers. The court reasoned that there is no denial of due process if the state provides reasonable remedies and the plaintiffs fail to avail themselves of them. *Id.* at 515. The Seventh Circuit systematically outlined the remedies available to the plaintiffs under Indiana law. These included habeas corpus when the welfare officers removed the children from the plaintiff's home; mandamus when the judge refused to allow them to file their own adoption petition; instituting an action based on fraud to enjoin the adoption; and filing a petition for visitation rights. *Id.* at 514–15. Finding that there was no due process violation, the court stated, "They did none of these things but instead brought this federal suit and by doing so made it impossible for the courts of Indiana to prevent the defendants' alleged misconduct." *Id.* We do not see any reason why Pena could not have availed himself of similar remedies.

In addition, Pena had numerous statutory remedies under Indiana law to register his claim of paternity, Ind.Code § 31–3–1.5, to contest the adoption proceedings, Ind.Code § 31–3–1–6.3, or to establish his paternity, Ind.Code § 31–6–6.1, or to challenge the decree under Ind.Code § 31–3–1.3–2 which sets time limits and standards for collateral attacks on adoption decrees. Pena did not take any of these steps. Pena would have the Court find that his brief stay in the Will County Jail precluded him from protecting his interests in his child while Defendants covertly spirited Amanda away to Indiana to have her give birth and place the baby for adoption. As our review of the statutory and equitable procedures available to Pena demonstrates, he had access to ample procedures to assert his rights and failed to take advantage of any of them, either before or after the birth of his child.[6] However well-engineered and orchestrated Pena's stay in jail was, we cannot say that it resulted in a denial of his due process rights as an unwed biological father.

This Court concludes that the Defendants' alleged conduct, even if true, does not amount to a denial of any constitutionally protected due process right Pena may have

---

**6.** To consider the issue from another viewpoint, we could ask what could Pena have done had he not been in custody at the time of his child's birth? Because he had no legally recognized relationship with Amanda or the unborn child, he could not have prevented her or her parents from travelling out of Illinois. Whether he was present or not, his consent for the adoption was not required and he does not actually challenge this aspect of the Indiana adoption statute. As this case makes clear, unwed biological fathers stand in a precarious position and must take affirmative steps to grasp the opportunity of establishing a relationship with their children or risk the loss of that opportunity forever.

as a biological father.[7] Pena failed to avail himself of the Illinois procedures enacted so that he could establish a father-child relationship, he failed to take advantage of the similar Indiana procedures, and he failed to challenge the adoption in Indiana. In short, Pena now may stand ready to accept the responsibilities of a father but he failed to grasp the opportunity in the time and manner provided by the laws of Illinois and Indiana to secure his rights. Consequently, he lost the wondrous opportunity and massive responsibilities of fatherhood. Unfortunately for Pena, this Court cannot allow him recovery for this loss under the Constitution.

## CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion to dismiss Pena's claims in Count I. The Court dismisses without prejudice Pena's state law claims in Counts II, III and IV.

---

7. The *Lehr* Court foreshadowed the result we reach in this case in a footnote. The Court noted that "This case happens to involve an adoption by the husband of the natural mother, but we do not believe the natural father has any greater right to object to such an adoption than to an adoption by two total strangers." 463 U.S. at 262 n. 19, 103 S.Ct. at 2994 n. 19.