Daniel WASSERMAN and Janessa
Benamau Wasserman, his
wife, Plaintiffs,

v.

THREE SEASONS ASSOCIATION NO.
1, INC., a Florida not-for-profit
corporation, Defendant.

No. 97–3047–CIV–KING.

United States District Court,
S.D. Florida.

Feb. 27, 1998.

Stuart Rosenfeldt, Hollywood, FL, for Plaintiffs.

Anthony Hayes, Miami, FL, for Defendant.

### ORDER DISMISSING COMPLAINT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss, filed November 24, 1997. Plaintiffs filed a response on December 22, 1997.

### Factual Background

Plaintiffs allege the following in their Complaint: On June 23, 1996, Plaintiffs and the

owner of an apartment at Defendant's condominium, Dr. Oaklander ("Oaklander") agreed to enter into a lease under which Plaintiffs would rent Oaklander's apartment. Plaintiffs completed an application and submitted a deposit to Oaklander. Formal acceptance of the lease was conditioned upon approval by Defendant. On July 14, 1996, Plaintiffs attended a meeting with Defendant's screening committee and Defendant's president Al Shapp ("Shapp"). At that meeting, Shapp questioned Plaintiffs vigorously about their child-bearing plans. Another member of the screening committee insinuated that Plaintiff Janessa Benamau Wasserman ("Ms.Wasserman") was pregnant, and the screening committee made it clear that no children would be allowed to reside in the condominium. The screening committee required Plaintiffs to sign a document stating:

> I, Daniel Wasserman, and I Janessa Benamau, do solemnly swear on all that is holy in the Hebrew religion, that we will not reproduce our specie while living at the Three Seasons Association No. 1 Inc. and if Janessa Benamau Wasserman gets pregnant while residing at these premises, we will vacate these premises before Janessa comes to term.

(Compl.Exh. A). Plaintiffs refused to sign the document. Defendant did not approve Plaintiffs for occupancy of the apartment. Plaintiffs allege that Defendant's actions constitute discrimination against familial status, in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, which makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).

Defendant moves to dismiss on the sole ground that Plaintiffs lack standing to challenge Defendant's alleged violation of the FHA because Plaintiffs are not members of a class protected by the FHA and Plaintiffs' injuries are not actual but hypothetical.

### Legal Standard

Dismissal is justified only when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 810, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (quoting *McLain v. Real Estate Bd. of New Orleans, Inc.,* 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980)). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

Furthermore, "when standing is challenged on the basis of the pleadings, [the court must] 'accept as true all material allegations of the complaint, and ... construe the complaint in favor of the complaining party.' " *Pennell v. City of San Jose,* 485 U.S. 1, 7, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988) (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

### Discussion

Defendant contends that Plaintiffs lack standing to challenge Defendant's practices under the FHA because they are not members of a class protected by the FHA,[1] and thus their injuries are speculative rather than actual. Defendant states in its motion that Plaintiffs' "allegation presupposes that the plaintiffs will one day become pregnant while living in the unit (the hypothetical situation) and then hypothesizes about the Association's reaction to the future event (the hypothetical reaction)." (Mot. to Dismiss at 5).

Plaintiffs do not dispute that they are not members of a class protected under the FHA. Rather, they contend that they are entitled to standing as "aggrieved persons"

---

1. Section 3602(k) of the FHA defines "familial status" as "one or more individuals (who have not attained the age, of 18 years) being domiciled with ... a parent or another person having legal custody of such individual or individuals." 42 U.S.C. § 3602(k). Plaintiffs had no children and Ms. Wasserman was not pregnant at the time they applied for housing.

under the FHA. Section 3613 of the FHA provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court." 42 U.S.C. § 3613(a)(1)(A). Rather than define "aggrieved person" as a protected class under the act, the statute defines "aggrieved person" as "any person who—(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." *Id.* § 3602(I). The Supreme Court has addressed extensively the issue of standing under the FHA and has ruled that because the FHA gives standing to "aggrieved persons," it does not require membership in the protected class for standing.[2] *See Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 103, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) (ruling that non-minority members of a village had standing to sue real estate brokers as "aggrieved persons" under the FHA on the ground that discriminatory sales practices robbed the village of racial balance); *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 208, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (holding that white tenants had standing to challenge a landlord's discrimination against nonwhites as "aggrieved persons" because they suffered loss of social benefits of an integrated community, missed business and professional advantages, and stigmatization). The Supreme Court observed that the FHA "serves an important role ... in protecting not only those against whom a discrimination is directed but also those whose complaint is that the manner of managing a housing project affects 'the very quality of their daily lives.' " *Trafficante,* 409 U.S. at 211 (quoting *Shannon v. U.S. Dept. of Housing & Urban Dev.,* 436 F.2d 809, 818 (3rd Cir.1970)).

Plaintiffs also assert that they suffered a palpable injury. They contend that they incurred tangible losses, such as increased expenditure and loss of proximity to work, as a result of Defendant's conduct.

■ Plaintiffs ask this Court to hold that their mere protest to a policy they perceived as discriminatory, which in truth may have resulted in their injury, entitles them to standing as "aggrieved persons" under the FHA. The Court recognizes that the FHA gives non-class members standing as "aggrieved persons" in some situations. However, a finding that the non-class member Plaintiffs in this case have standing to sue as "aggrieved persons" would offend traditional notions of standing. To establish standing, Plaintiffs must show that: (1) they suffered an injury in fact, which is concrete, actual and imminent rather than conjectural or hypothetical; (2) the injury is fairly traceable to the allegedly illegal actions of the defendant; and (3) that it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ Standing requires a sufficient nexus between a plaintiff's injury and the allegedly illegal actions of a defendant. While the Court agrees that Plaintiffs suffered an actual injury and the Court recognizes that non-class members may sue under the FHA, Plaintiffs do not have standing as "aggrieved persons" because their protest against Defendant's policy and the resulting injury do not have a sufficient nexus to any actual discrimination against protected class members. The Supreme Court jurisprudence applying the "aggrieved persons" provision of the FHA makes clear that an "aggrieved person" is not just any non-class member who protests what he perceives to be a discriminatory housing policy. Rather, an "aggrieved person" is a non-class member who (1) suffers actual injury as an ancillary effect of present or imminent discrimination against a protected class member and (2) challenges the discriminatory policy on behalf of that class member.

In *Gladstone,* 441 U.S. at 103, for example, the plaintiffs, non-minority members of a village, had standing to challenge discriminatory real estate sales practices as "aggrieved persons" under the FHA because the discrimination against protected minorities had the ancillary effect of robbing the village of racial balance, thereby injuring the plaintiffs. The Supreme Court observed that the fact

---

2. The Court analyzed section 810 of the Civil Rights Act of 1968, 42 U.S.C. § 3610(a), a predecessor to the "aggrieved person" clause of the FHA.

that the plaintiffs "themselves are not granted substantive rights by [the FHA], however, hardly determines whether they may sue to enforce the ... rights of others ... as long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed." Similarly, in *Trafficante*, 409 U.S. at 209, the white plaintiffs had standing to sue as "aggrieved persons" because the landlord's discrimination against nonwhites had the ancillary effect of causing the plaintiffs to suffer loss of social benefits of an integrated community, missed business and professional advantages, and embarrassment and stigmatization. Although the plaintiffs in these cases were not the actual recipients of discrimination, each of the cases involve class members who were actually injured by a discriminatory policy and on whose behalf the non-class member plaintiffs challenged the discriminatory policies.

In the instant case, Plaintiffs did not protest Defendant's policy on the ground that they suffered an ancillary injury from Defendant's discrimination against protected class members. Indeed, in the instant case, Plaintiffs identify no protected class members on whose behalf they challenged Defendant's policies. It appears that Plaintiffs' motivation for refusing to sign Defendant's statement was either that they philosophically objected to the statement or that they objected to the policy because they might one day be in the class against whom the policy might discriminate. Under the current Supreme Court jurisprudence, these reasons do not demonstrate enough of a stake in the controversy to confer standing on Plaintiffs.

If the Court were to find that Plaintiffs had standing as "aggrieved persons," it would have to come to the overbroad conclusion that philosophical disagreement with a policy alone confers standing to challenge the policy, or the unlikely conclusion that the potential to become members of a protected class gives standing to challenge discrimination against that class, in the absence of any evidence of actual discrimination against class members. The leading cases on standing as "aggrieved persons" under the FHA make clear that the non-class member must have a sufficient stake in or nexus with the controversy and that a stake in the controversy is demonstrated when the non-class member suffers an ancillary injury as a result of the defendant's tangible discrimination against protected class members.[3] While the Court is cognizant that Defendant's policy might one day have the effect of discriminating on the basis of familial status, Plaintiffs' injury simply does not have a sufficient nexus with any actual discrimination, and thus Plaintiffs lack the standing to prevent such a contingency from occurring.

### Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Dismiss be, and the same is hereby, GRANTED. It is further

ORDERED, ADJUDGED, and DECREED that the above-styled case be, and the same is hereby, DISMISSED.

DONE AND ORDERED in Chambers at the James Lawrence King Federal Justice Building and United States District Courthouse, Miami, Florida, this 27th day of February, 1998.

---

**3.** Plaintiffs cite to one case from the Seventh Circuit in which the court held that persons who were evicted after they attempted to become foster parents had standing to challenge the landlord's actions as discriminatory under the FHA. *See Gorski v. Troy*, 929 F.2d 1183, 1187–89 (7th Cir.1991). The Court observed that the FHA allows non-class members to bring suit as "aggrieved persons," but did not elaborate with specificity the requirements of being an "aggrieved person," and in particular the requirement of a nexus between the aggrieved person's injury and actual discrimination under the FHA. Moreover, *Gorski* is quite distinguishable on its facts. The plaintiffs were in the process of becoming foster parents and were evicted for that reason. Thus, the plaintiffs were fairly characterized as protected class members. In the present case, there is no indication that Plaintiffs were in the process of becoming parents, or, indeed, whether they intended to become parents at all.